***FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER***

Electronically Filed
Supreme Court
SCWC-16-0000558
18-JAN-2018
08:01 AM

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

BENJAMIN EDUWENSUYI,
Petitioner/Defendant-Appellant.

SCWC-16-0000558

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000558; CASE NO. 1DTA-16-00425)

JANUARY 18, 2018

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY POLLACK, J.

The appeal in this case arises from a challenge by Benjamin Eduwensuyi to the validity of his waiver of the right to testify at trial and the propriety of the conviction that ensued. We hold that the record does not support a conclusion that Eduwensuyi's waiver of the right to testify was voluntarily, intelligently, and knowingly made. Because the

error was not harmless beyond a reasonable doubt, we vacate the conviction and remand the case for further proceedings.

## I.    FACTS AND PROCEDURAL HISTORY

On February 1, 2016, Eduwensuyi was charged by complaint in the Honolulu District Court of the First Circuit (district court) with operating a vehicle under the influence of an intoxicant in violation of Hawaii Revised Statutes (HRS) § 291E-61(a)(1).[1]  A bench trial took place on July 11, 2016.[2] Prior to the presentation of evidence, the district court advised Eduwensuyi as follows:

> THE COURT: . . . I have to advise you that you have a right to testify if you choose to do so.
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And you also have a right not to testify. That's up to you.  I'll question you further toward the end of the trial as to whether or not you want to waive either of these rights, to make sure that you've been fully informed of your rights and to make sure that any decision you make is your decision, it's voluntary, okay.  So your attorney can give you advice about whether or not you should or should not testify, but ultimately, it's your decision.  Do you understand that?

---

[1]    HRS § 291E-61(a)(1) (Supp. 2015) provides as follows:

A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

(1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

[2]    The Honorable Richard J. Diehl presided over the trial proceedings.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay, very well. We can readily proceed then.

The State presented the testimony of one witness, Officer Jessie Takushi of the Honolulu Police Department. Officer Takushi testified that at approximately 4:37 a.m. on January 17, 2016, he stopped a vehicle occupied by Eduwensuyi for multiple traffic infractions, including crossing a double solid yellow line.

According to Officer Takushi, as he was approaching Eduwensuyi's vehicle, he saw Eduwensuyi climbing from the driver's seat into the passenger's seat. When Officer Takushi reached the vehicle, he noticed that there was a different male in the driver's seat and that Eduwensuyi was "kind of laying down on the passenger's side with his feet still in the driver's seat area."

Officer Takushi testified that he asked Eduwensuyi for his driver's license, registration, and insurance, which Eduwensuyi provided. Officer Takushi stated that Eduwensuyi's eyes were red and watery, his speech was slurred, and an odor of alcohol emanated from inside the vehicle. At Officer Takushi's request, Eduwensuyi agreed to participate in the standardized field sobriety test. According to Officer Takushi, Eduwensuyi was unsteady on his feet, he swayed while standing, and he

dragged his feet when walking. Officer Takushi acknowledged that his report did not mention that Eduwensuyi was swaying while standing.

Following Officer Takushi's testimony, the State rested. The defense then informed the district court that it would not be presenting evidence, and the following exchange occurred:

> THE COURT: . . . sir, you do have a right to testify if you choose to do so, as I said at the beginning of the trial. And if you testify, though, the prosecutor can cross-examine you and ask you questions. If you decide not to testify, the court -- I can't hold it against you, nor would I, that you are not going to testify. Okay, doesn't mean anything one way or the other to the court. Do you understand these rights?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: All right. And have you consulted with your attorney about whether or not you wish to testify?
>
> THE DEFENDANT: I like to take a second to do so right now, sir.
>
> THE COURT: Pardon me?
>
> THE DEFENDANT: I'd like to take a second right now, Your Honor -- . . . -- to do so again.
>
> THE COURT: -- very well.
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: You have consulted with your attorney?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And do you wish to testify?
>
> THE DEFENDANT: No, I'm not --
>
> THE COURT: Okay.
>
> THE DEFENDANT: -- Your Honor.

> THE COURT: Okay, the court finds that the defendant
> has been advised of his rights, has knowingly,
> intelligently, and voluntarily waived the right to testify
> or not to testify. . . . .

Eduwensuyi then moved for judgment of acquittal, which motion

the court denied.

The district court found Eduwensuyi guilty of

operating a vehicle under the influence of an intoxicant in

violation of HRS § 291E-61(a)(1) and imposed sentence.[3]

Eduwensuyi appealed to the Intermediate Court of Appeals (ICA)

from the district court's judgment entered on July 11, 2016.

## II.    ICA PROCEEDINGS

In his opening brief, Eduwensuyi argued that under

Tachibana v. State, 79 Hawai'i 226, 236, 900 P.2d 1293, 1303

(1995), the district court was required to engage him in a

colloquy prior to accepting his waiver of the right to testify

to ensure he was knowingly, voluntarily, and intelligently

relinquishing his rights.  Eduwensuyi contended that the court's

Tachibana colloquy was incomplete and defective because the

court did not advise him that he had a right not to testify and

that if he wanted to testify no one could prevent him from doing

---

[3]    The district court sentenced Eduwensuyi to the following: pay a fine and fees totaling $562; submit to a substance abuse assessment and obtain recommended treatment; and participate in a 14-hour substance abuse rehabilitation program.  The district court further ordered that Eduwensuyi's license be revoked for a period of one year.

5

so.  Because the colloquy was defective, Eduwensuyi maintained, any waiver by him was not knowing, intelligent, and voluntary.

In addition, Eduwensuyi contended that the court failed to engage in a true exchange during the colloquy. Eduwensuyi argued that, instead of administering the colloquy in segments and asking Eduwensuyi whether he understood each advisement, the district court simply recited a litany of rights.  (Citing State v. Christian, 88 Hawai'i 407, 967 P.2d 239 (1998).)  Eduwensuyi added that there was nothing in the record to establish that he understood each of his rights or that the court had an objective basis for finding that his waiver of the right to testify was validly made.

Eduwensuyi further submitted that the district court's violation of the requirements of Tachibana was not harmless beyond a reasonable doubt because the record offered no hint as to whether his testimony, had he given it, could have established reasonable doubt that he operated a vehicle under the influence of an intoxicant.  Eduwensuyi concluded that, because it is inherently uncertain what he would have testified to at trial, there is a reasonable possibility that the violation of his constitutional right to testify contributed to his conviction.

In its answering brief, the State first addressed Eduwensuyi's contention that the district court failed to engage in a true exchange during the Tachibana colloquy. The State noted that the court asked Eduwensuyi at the end of both the pretrial advisement and the ultimate colloquy whether he understood his rights and, in both instances, Eduwensuyi responded in the affirmative. The State added that Eduwensuyi was also permitted to consult with defense counsel regarding the waiver. Hence, the State argued that the court's exchange with Eduwensuyi was sufficient to enable the court to ascertain Eduwensuyi's understanding of the court's advisements.

Turning to the contents of the pretrial advisement and the ultimate colloquy, the State acknowledged that the district court's pretrial advisement was deficient in that the court did not advise Eduwensuyi that his decision not to testify could not be used against him by the factfinder. The State submitted that, because the pretrial advisement is reviewed for actual prejudice, the district court could have rectified the error by ensuring that Eduwensuyi was fully informed of his rights in the ultimate colloquy. The State conceded, however, that "the ultimate colloquy was also deficient in some respects" because the district court failed to inform Eduwensuyi of two of the five basic requirements of Tachibana--namely, that if he wanted

to testify, no one could prevent him from doing so and that he had the right not to testify.

The State further acknowledged that the district court's violation of Tachibana "may not be harmless beyond a reasonable doubt given the circumstances in this case" and that "it is not uncommon for convictions to be vacated as a result of deficient Tachibana colloquies." The State indicated that the situation was unfortunate given that the evidence showed that Eduwensuyi operated a vehicle under the influence of an intoxicant and that the district court failed "to follow the simple mandates" of this court's precedent. The State concluded that it "believes the right to testify colloquy was deficient and thus a new trial is warranted."

On June 9, 2017, the ICA entered a summary disposition order (SDO).[4] In its SDO, the ICA did not reference that the State had acknowledged in its answering brief that both the district court's pretrial advisement and the ultimate colloquy were deficient because the district court failed to advise Eduwensuyi of basic information required by Tachibana. The ICA also did not mention in its SDO that the State had conceded error in the conviction in this case.

_____

[4] The ICA's SDO can be found at State v. Eduwensuyi, 140 Hawai'i 7, 395 P.3d 1241 (App. June 9, 2017).

8

The ICA determined that, although the district court did not advise Eduwensuyi in the ultimate colloquy that no one could prevent him from testifying if he wanted to do so, the court adequately covered this advisement in the pretrial colloquy by advising him that he had a right to testify or not to testify and that it was ultimately his decision whether to testify.  The ICA further found that given the short time between the pretrial advisement and the ultimate colloquy,[5] Eduwensuyi's acknowledgment that he understood his rights, and Eduwensuyi's opportunity to further consult with his counsel prior to waiving the right to testify, the district court satisfied the requirements of Tachibana.  The ICA thus concluded that Eduwensuyi validly waived the right to testify and accordingly affirmed the district court's judgment.

### III.      STANDARD OF REVIEW

The validity of a criminal defendant's waiver of the right to testify is a question of constitutional law reviewed by this court under the right/wrong standard.  State v. Gomez-Lobato, 130 Hawai'i 465, 468-69, 312 P.3d 897, 900-01 (2013).

---

[5]      The bench trial lasted fifty minutes.

## IV.    DISCUSSION

Hawai'i law has historically protected both a defendant's right to testify and right not to testify.  State v. Monteil, 134 Hawai'i 361, 369, 341 P.3d 567, 575 (2014).  The right to testify is guaranteed by the Fifth and Sixth Amendments to the United States Constitution; parallel provisions contained in article I, sections 5, 10, and 14 of the Hawai'i Constitution; and HRS § 801-2.  State v. Pomroy, 132 Hawai'i 85, 91, 319 P.3d 1093, 1099 (2014).  The right not to testify is protected by the United States Constitution's Fifth Amendment guarantee against compelled testimony and the Hawai'i Constitution's counterpart provision under article I, section 10.  Monteil, 134 Hawai'i at 369, 341 P.3d at 575.

A key purpose of the Tachibana colloquy is to protect a defendant's right to testify.  Tachibana v. State, 79 Hawai'i 226, 236, 900 P.2d 1293, 1303 (1995).  In Tachibana, this court declared as follows:

> Thus, we hold that in order to protect the right to testify under the Hawai'i Constitution, trial courts must advise criminal defendants of their right to testify and must obtain an on-the-record waiver of that right in every case in which the defendant does not testify.

Id. (footnotes omitted).  Hence, trial courts are charged with the "serious and weighty responsibility" of ensuring that the waiver of the right to testify is a knowing and intelligent

10

decision.  Monteil, 134 Hawai'i at 371, 341 P.3d at 577 (quoting

Tachibana, 79 Hawai'i at 233, 900 P.2d at 1300).

A defendant's constitutional right to testify is

violated when the Tachibana colloquy is inadequate to provide an

"objective basis" for finding the defendant "knowingly,

intelligently, and voluntarily" relinquished his or her right to

testify.  State v. Han, 130 Hawai'i 83, 91, 306 P.3d 128, 136

(2013).  In determining whether a waiver of the right to testify

was voluntarily and intelligently made, this court looks to the

totality of the facts and circumstances of each particular case.

Id. at 89, 306 P.3d at 134.

### A.    The Tachibana Colloquy Was Inadequate

In its answering brief to the ICA, the State conceded

that "the ultimate colloquy was . . . deficient in some

respects" because, inter alia, "the district court failed to

inform [Eduwensuyi] . . . that if he wants to testify that no

one can prevent him from doing so."  The State concluded that it

"believes the right to testify colloquy was deficient and thus a

new trial is warranted."  Upon a review of the record and

applicable law, the State's concession of error was properly

made.  See Territory v. Kogami, 37 Haw. 174, 175 (Haw. Terr.

1945) (holding that, while a prosecutor's confession of error is

"entitled to great weight," before a conviction is reversed, "it

11

is incumbent upon the appellate court to ascertain first that the confession of error is supported by the record and well-founded in law and to determine that such error is properly preserved and prejudicial").

### 1. The district court did not advise Eduwensuyi that no one could prevent him from testifying.

Under Tachibana, a defendant must be advised, inter alia, "that if he [or she] wants to testify that no one can prevent him [or her] from doing so."  79 Hawai'i at 236 n.7, 900 P.2d at 1303 n.7 (alterations in original) (quoting State v. Silva, 78 Hawai'i 115, 122-23, 890 P.2d 702, 709-10 (App. 1995)).  This advisement is critical.  See, e.g., Pomroy, 132 Hawai'i at 92, 319 P.3d at 1100.  The Tachibana colloquy was adopted by this court as the procedure that would "best protect defendants' rights while maintaining the integrity of the criminal justice system."  Tachibana, 79 Hawai'i at 234, 900 P.2d at 1301.  This court recognized that "[m]any defendants are unaware that they have a constitutional right to testify which no one, not even their lawyer, may take away from them."  Id. (quoting Boyd v. United States, 586 A.2d 670, 677 (D.C. 1991)).

In Pomroy, we held that the Tachibana colloquy was "defective" in part because the court "did not fully advise [the defendant] of his rights."  132 Hawai'i at 92, 319 P.3d at 1100. As this court explained,

> Although the district court advised [the defendant] that he had the right to testify on his behalf and that if he chose to testify, he would be subject to cross-examination by the State, the district court did not advise [the defendant] that he had the right not to testify and that no one can prevent him from testifying.

Id. (emphases added).  Here, as in Pomroy, the district court failed to advise Eduwensuyi that no one could prevent him from testifying.[6]  This error was compounded by the court's failure to inform Eduwensuyi during the ultimate colloquy that the decision regarding testifying was his to make.  Given that the advisement that no one can prevent the defendant from testifying is critical and the only Tachibana advisement that emphasizes that the waiver of the right to testify must be voluntary, the court's Tachibana colloquy was deficient.[7]

---

[6]    The State also properly conceded that the district court did not advise Eduwensuyi during the ultimate colloquy that he had a right not to testify.  See Kogami, 37 Haw. at 175.  In Pomroy, this court held that "the district court did not advise [the defendant] that he had the right not to testify;" the district court merely stated, "If you choose not to testify, I cannot hold that against you."  132 Hawai'i at 92, 319 P.3d at 1100.  Likewise, the district court here advised Eduwensuyi, "If you decide not to testify, the court -- I can't hold it against you."  Such an advisement is similarly flawed, since telling a defendant "[i]f you decide not to testify" is not equivalent to informing the defendant of the constitutional right not to testify.

[7]    The ICA appears to have similarly determined that the ultimate colloquy was deficient because it acknowledged that the district court neglected to advise Eduwensuyi that no one can prevent him from testifying.  The ICA instead relied on, inter alia, the pretrial advisement to conclude that Eduwensuyi validly waived the right to testify.

13

## 2. The pretrial advisement did not cure the deficiency of the ultimate colloquy.

The ICA relied on the pretrial advisement to support its conclusion that the ultimate colloquy was adequate. In its answering brief, the State conceded that the pretrial advisement was deficient because the district court did not advise Eduwensuyi that if he decided not to testify, the court as the factfinder would not use that decision against him. The State's concession on this point was correct. See Kogami, 37 Haw. at 175.

In State v. Lewis, this court mandated that trial courts administer a pretrial advisement to defendants:

> the trial courts "prior to the start of trial, [shall] (1) inform the defendant of his or her personal right to testify or not to testify and (2) alert the defendant that, if he or she has not testified by the end of the trial, the court will briefly question him or her to ensure that the decision not to testify is the defendant's own decision."

94 Hawai'i 292, 297, 12 P.3d 1233, 1238 (2000) (alteration in original) (quoting Tachibana, 79 Hawai'i at 237 n.9, 900 P.2d at 1304 n.9). To more fully protect the right not to testify, the court in Monteil added a third requirement to the pretrial advisement. 134 Hawai'i at 373, 341 P.3d at 579. There, we held that trial courts must also advise defendants during the pretrial advisement that their exercise of the right not to testify may not be used by the factfinder to decide the case. Id. The district court in this case was thus required to inform

14

Eduwensuyi during the pretrial advisement that if he decided not to testify, that decision would not be used against him.  Id. The court failed to advise Eduwensuyi accordingly, and therefore the pretrial advisement was deficient.

The district court also did not inform Eduwensuyi during the pretrial advisement that no one could prevent him from testifying.  Thus, the pretrial advisement could not cure the deficiency of the ultimate colloquy, which likewise omitted this information.  The ICA nevertheless determined that, while the district court neglected to advise Eduwensuyi during the ultimate colloquy that no one could prevent him from testifying, the court did inform Eduwensuyi during the pretrial advisement that the decision whether to testify was ultimately his. However, an advisement that the decision whether to testify or not to testify is ultimately the defendant's is not equivalent under our precedent to an advisement that no one can prevent the defendant from testifying.

In Pomroy, the district court advised the defendant during the ultimate colloquy, inter alia, that the decision to testify "is yours and yours alone."  132 Hawai'i at 92, 319 P.3d at 1100.  This court determined that the ultimate colloquy was defective in part because the district court did not advise Pomroy that no one could prevent him from testifying.  Id.

15

Similarly, the district court here informed Eduwensuyi during the pretrial advisement that his counsel may advise him about whether or not to testify but that the decision regarding testifying was ultimately his.  The court failed, however, to inform Eduwensuyi during the ultimate colloquy that no one could prevent him from testifying.  Thus, the "district court incompletely followed Tachibana's directive."  Pomroy, 132 Hawai'i at 92, 319 P.3d at 1100.

**3. The ICA's reasons for concluding that the district court satisfied the requirements of Tachibana are flawed.**

In concluding that the district court satisfied the requirements of Tachibana, the ICA relied upon the fact that only a short time elapsed between the district court's pretrial advisement and the ultimate colloquy.  However, as discussed supra, the pretrial advisement did not include the advisory that was absent from the ultimate colloquy--that no one could prevent Eduwensuyi from testifying if he wanted to do so.

Additionally, a general assumption that a trial of short duration means that the defendant will remember and carefully consider what was previously stated in a pretrial advisement is not a fact that can be judicially noticed.  Indeed, the opposite may be true.  A trial, especially the commencement of the trial, is an event where a defendant may be

16

anxious or nervous and not listening effectively.[8]  In addition, it is questionable that a defendant would extrapolate from what the judge actually said--it's your decision to testify or not to testify--to mean something in addition--that no one can prevent you from testifying.  Further, the ICA's assumption based on the brevity of the trial builds upon a premise that the defendant is able to correctly recall a pretrial advisory at the end of trial.  This assumption treats all defendants alike in terms of their ability to understand and recall the initial advisory despite differences, for example, in education, proficiency in understanding, and courtroom experience.  It also does not account for what comes in between the pretrial advisement and the conclusion of trial: the evidence adduced at trial that may affect the defendant's ability at the time of the ultimate colloquy to recall or focus upon a prior advisory.  Finally, the pretrial advisement notifies the defendant of the right to testify or not to testify but states that if the defendant has

---

[8]    "A criminal proceeding is, at best, an anxious event for a defendant and his family."  Sara K. Sorenson, Treating Defendants as Individuals, 78 N.D. L. Rev. 259, 260 (2002).  Courts have recognized in other contexts that events associated with a criminal accusation can cause a defendant to suffer from anxiety.  See, e.g., United States v. Henson, 945 F.2d 430, 438 (1st Cir. 1991) ("[C]onsiderable anxiety normally attends the initiation and pendency of criminal charges[.]"); State v. Wasson, 76 Hawai'i 415, 422, 879 P.2d 520, 527 (1994) (citing Barker v. Wingo, 407 U.S. 514, 533 (1972)) (recognizing that the defendant, like most criminal defendants, suffered from anxious moments awaiting trial); Commonwealth v. Leate, 367 Mass. 689, 694 (1975) (indicating that there is an assortment of pressures inherent in the situation where a defendant pleads guilty).

not testified by the end of trial, the court will question the defendant later regarding the decision not to testify. It is significant that the defendant is told that the pretrial advisement is <u>preliminary</u> in nature and that the subject matter will be addressed fully at a later point if the defendant chooses not to testify.[9]

Thus, to assume, as the ICA did, that a pretrial advisement can serve as a substitute for deficiencies in the ultimate colloquy based on the length of the trial is inherently problematic. Instead, a knowing, intelligent, and voluntary waiver must be borne out by evaluating the facts and circumstances that are evidenced as to the particular defendant, <u>Han</u>, 130 Hawai'i at 89, 306 P.3d at 134, and not based upon general assumptions of what a defendant would recall from a pretrial advisement--as deduced from the length of a trial.[10]

---

[9] Further, the purpose of the pretrial advisement is not to make up for the inadequacies of the ultimate colloquy. Rather, the pretrial advisement was implemented because it would have "the beneficial effect of limiting any post-conviction claim that a defendant testified in ignorance of his or her right not to testify," <u>State v. Lewis</u>, 94 Hawai'i 292, 297, 12 P.3d 1233, 1238 (2000), and would lessen the risk that the ultimate colloquy would inadvertently affect the defendant's right not to testify, <u>Tachibana</u>, 79 Hawai'i at 237 n.9, 900 P.2d at 1304 n.9.

[10] Our analysis is not meant to indicate that a pretrial colloquy cannot be considered as part of the totality of facts and circumstances in an evaluation of whether a particular defendant's waiver was knowing and voluntary.

The ICA also relied on "Eduwensuyi's acknowledgment of his understanding of his rights" at the conclusion of the colloquy. However, as discussed, the ultimate colloquy was deficient in that the court did not advise Eduwensuyi that no one could prevent him from testifying. A defendant's acknowledgment of an understanding of an incomplete colloquy cannot serve as a basis for a valid waiver of the right to testify. Rather, a knowing, intelligent, and voluntary waiver is demonstrated by a showing that the defendant was fully and accurately informed in accordance with the requirements of Tachibana and that the defendant acknowledged an understanding of the advisements given. See Monteil, 134 Hawai'i at 371, 341 P.3d at 577 ("[A] decision by a defendant not to testify should be based upon a defendant's awareness of the 'relevant circumstances and likely consequences' of such a decision." (quoting Brady v. United States, 397 U.S. 742, 748 (1970))).

Finally, as support for its conclusion that there was a valid waiver in this case, the ICA reasoned that Eduwensuyi was afforded the opportunity to--and he actually did--consult with defense counsel during the ultimate colloquy. However, neither the basis of Eduwensuyi's request to consult with counsel during the ultimate colloquy nor the nature of their conversation is known. After Eduwensuyi consulted with his

19

counsel, the district court did not ask Eduwensuyi whether he had any questions regarding his rights to testify and not to testify, nor did the court ask whether speaking with counsel answered any questions that he might have had regarding those rights. Instead, the court simply asked Eduwensuyi whether he wished to testify. And based on the negative response from Eduwensuyi, the court found a knowing and intelligent waiver of that right. Thus, there is nothing in the record that indicates that Eduwensuyi's discussion with counsel enhanced his understanding of his constitutional rights, much less rectified the error in the court's colloquy.

In addition, it is settled law that the duty to ensure that a defendant's waiver of the right to testify is validly made is one that is imparted to a court. "A court has a 'serious and weighty responsibility to determine whether' a waiver of the right to testify is a knowing and intelligent decision." Monteil, 134 Hawai'i at 371, 341 P.3d at 577 (quoting Tachibana, 79 Hawai'i at 233, 900 P.2d at 1300). Thus, a court may not rely upon an off-the-record discussion between counsel and a defendant to establish a valid waiver of a constitutional right, and the ICA erred in doing so. Cf. State v. Gomez-Lobato, 130 Hawai'i 465, 477-78, 312 P.3d 897, 909-10 (2013) (finding waiver of jury trial deficient in part because court

20

should have inquired as to defendant's understanding of jury trial waiver form that was interpreted to him out of court).

Based on the foregoing, the ICA's reasons for concluding that the district court satisfied the requirements of Tachibana are flawed and cannot support a finding that Eduwensuyi validly waived the right to testify.

## B. The Court's Error Was Not Harmless Beyond A Reasonable Doubt

The State acknowledged in its answering brief that the district court's violation of Tachibana in this case "may not be harmless beyond a reasonable doubt given the circumstances," concluding that it "believes the right to testify colloquy was deficient and thus a new trial is warranted." We find that the State's concession on this point was proper. See Kogami, 37 Haw. at 175. "Once a violation of the constitutional right to testify is established, the conviction must be vacated unless the State can prove that the violation was harmless beyond a reasonable doubt." Tachibana, 79 Hawai'i at 240, 900 P.2d at 1307 (citations omitted). "The relevant question under the harmless beyond a reasonable doubt standard is whether there is a reasonable possibility that error might have contributed to [the] conviction." Han, 130 Hawai'i at 93, 306 P.3d at 138 (quoting State v. Schnabel, 127 Hawai'i 432, 450, 279 P.3d 1237, 1255 (2012)).

Had Eduwensuyi testified, he may have been able to contest the State's case and shed light on whether he operated a vehicle under the influence of an intoxicant in violation of HRS § 291E-61(a)(1). On this record, it is not knowable whether Eduwensuyi's testimony would have had any effect on the outcome of his case. Pomroy, 132 Hawai'i at 94, 319 P.3d at 1102. Hence, it is "impossible to conclude" that violating Eduwensuyi's right to testify was harmless beyond a reasonable doubt. Tachibana, 79 Hawai'i at 240, 900 P.2d at 1307; State v. Silva, 78 Hawai'i 115, 126, 890 P.2d 702, 713 (App. 1995); Pomroy, 132 Hawai'i at 94, 319 P.3d at 1102.[11] Therefore, Eduwensuyi's conviction must be vacated.

## C. The ICA Failed To Give Any Deference To The State's Concessions Of Error

As noted supra, the State conceded in its answering brief that the pretrial advisement was deficient because the district court did not advise Eduwensuyi that his decision not to testify could not be used by the factfinder against him. The State also conceded that the ultimate colloquy was deficient because "the district court failed to inform [Eduwensuyi] of 2 of the 5 basic requirements of Tachibana, namely that if he

---

[11]    Eduwensuyi also argues that the court did not engage in a true colloquy. In light of the disposition in this case, we do not address this contention.

wants to testify that no one can prevent him from doing so and that he has the right not to testify." The State further acknowledged that the district court's violation of Tachibana "may not be harmless beyond a reasonable doubt given the circumstances in this case" and concluded that it "believes the right to testify colloquy was deficient and thus a new trial is warranted."

A prosecutor's confession, although not binding on an appellate court, is "entitled to great weight." Territory v. Kogami, 37 Haw. 174, 175 (Haw. Terr. 1945); see also State v. Wasson, 76 Hawai'i 415, 418, 879 P.2d 520, 523 (1994) (considering the State's concession and concluding that the State properly conceded error); State v. Solomon, 107 Hawai'i 117, 127-28, 111 P.3d 12, 22-23 (2005) (recognizing the prosecutor's confession of error and vacating the defendant's conviction and remanding the case for a new change of plea hearing). Thus, the ICA was required to consider the State's concessions of error set forth in its answering brief. However, nothing in the ICA's decision indicates that the ICA gave due consideration to the State's concessions in its evaluation of the issues presented in this case.[12] See Kogami, 37 Haw. at 175;

---

[12] As stated, in Kogami, this court indicated that a prosecutor's confession of error is "entitled to great weight." 37 Haw. at 175. We note

(continued . . .)

23

Wasson, 76 Hawai'i at 418, 879 P.2d at 523; Solomon, 107 Hawai'i at 127, 111 P.3d at 22.

As discussed, the State's concessions are supported both by the record in this case and applicable legal principles. Under our well-settled law, while the ICA was not bound by the State's concessions, the ICA was required to give due consideration to them. Nonetheless, in light of the disposition reached in this case, we do not consider the effect of the ICA's failure to give the requisite consideration to the State's concessions.

### V.    CONCLUSION

The Tachibana colloquy was inadequate in that the district court did not advise Eduwensuyi during the ultimate colloquy that no one could prevent him from testifying. This error was not harmless beyond a reasonable doubt. Therefore, the ICA's Judgment on Appeal and the district court's judgment

---

(. . . continued)

that the level of deference that would be accorded to a concession would depend on the issue presented. For example, in Kogami, we found that a concession relating to the insufficiency of the evidence as to the charged violation of a statute was well-founded. Id. However, if the confession of error relates to an interpretation of a law, no deference need be given. See Orloff v. Willoughby, 345 U.S. 83, 87 (1953) ("This Court, of course, is not bound to accept the Government's concession that the courts below erred on a question of law."). Given the manifest deficiency of the Tachibana colloquy in this case and because the ICA entirely failed to acknowledge the State's concessions on appeal, we need not address the level of deference that the ICA should have accorded to the State's confessions of error relating to the district court's noncompliance with the Tachibana requirements.

24

are vacated, and the case is remanded to the district court for

further proceedings.

| | |
|---|---|
| James S. Tabe<br>for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Loren J. Thomas<br>for respondent | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |

