***FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER***

**Electronically Filed
Supreme Court
SCWC-15-0000682
20-JUN-2019
08:39 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

MARCIA D. WILSON,
Petitioner/Defendant-Appellant.

SCWC-15-0000682

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-15-0000682; CASE NO. 2DTA-14-00949)

JUNE 20, 2019

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY POLLACK, J.

During a trial for operating a vehicle under the influence of an intoxicant, the defense counsel and the State stipulated to the arresting police officer's training and qualifications to conduct standardized field sobriety tests. This appeal arises from a challenge by the defendant to the lack

of a colloquy before the trial court accepted the stipulation. Although we hold that the Intermediate Court of Appeals (ICA) did not ultimately err in concluding that a colloquy was not required in the circumstances of this case, we provide guidance as to the proper allocation of authority between a defendant and defense counsel in light of statements by the ICA regarding defense counsel's authority to stipulate to an evidentiary matter based on "trial tactics and procedure." We further hold that the ICA erred in its alternative holding, which employed a novel test for evaluating prejudice resulting from a trial court's acceptance of a stipulation without a colloquy.

## I. FACTS AND PROCEDURAL HISTORY

On September 2, 2014, the State filed a complaint in the District Court of the Second Circuit (district court) charging Marcia Wilson with operating a vehicle under the influence of an intoxicant (OVUII) in violation of Hawaiʻi Revised Statutes (HRS) §§ 291E-61(a)(1)[1] and 291E-61(b),[2] as well

---

[1] HRS § 291E-61(a)(1) (2007) provides in full:

(a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

(1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

as refusal to submit to a breath, blood, or urine test in violation of HRS §§ 291E-15[3] and 291E-68.[4]  A bench trial began on May 15, 2015, with the proceedings thereafter continued to July 15, 2015.[5]

The only witness that the State called to testify was Officer Jun Hattori.  Prior to Officer Hattori taking the stand, the following exchange occurred:

---

(. . . continued)

[2]     HRS § 291E-61(b) (2007 & Supp. 2014) establishes the penalties for committing the offense of OVUII and provides for enhanced penalties for repeat OVUII offenders.

[3]     At the time of the incident giving rise to this case, HRS § 291E-15 (2007 & Supp. 2014) provided in full as follows:

> If a person under arrest refuses to submit to a breath, blood, or urine test, none shall be given, except as provided in section 291E-21.  Upon the law enforcement officer's determination that the person under arrest has refused to submit to a breath, blood, or urine test, if applicable, then a law enforcement officer shall:
>
> > (1) Inform the person under arrest of the sanctions under section 291E-41, 291E-65, or 291E-68; and
> >
> > (2) Ask the person if the person still refuses to submit to a breath, blood, or urine test, thereby subjecting the person to the procedures and sanctions under part III or section 291E-65, as applicable;
>
> provided that if the law enforcement officer fails to comply with paragraphs (1) and (2), the person shall not be subject to the refusal sanctions under part III or IV.

[4]     At the time of Wilson's offense, HRS § 291E-68 (Supp. 2014) provided in full: "Except as provided in section 291E-65, refusal to submit to a breath, blood, or urine test as required by part II is a petty misdemeanor."  This provision was subsequently repealed in 2016.  See 2016 Haw. Sess. Laws Act 17, § 2 at 21.

[5]     The Honorable Kelsey T. Kawano presided.

[THE PROSECUTOR]: So, your Honor, after discussing this case with the Public Defender, at this time I believe we're going to stipulate to Officer Hattori's training, that he followed the standards and guidelines and requirements of the [National Highway Traffic Safety Administration (NHTSA)] Manual. It was supervised by a NHTSA Certified Instructor.

Officer Hattori's qualified and certified to conduct the standard--standardized field sobriety tests and that he received specialized training in administering and grading all of the standard field sobriety tests.

THE COURT: All right.

[THE PROSECUTOR]: And just for the record, your Honor, when I call Officer Hattori, he'll briefly tell the Court what training he has received.

THE COURT: All right.

The court did not engage in a colloquy with Wilson before accepting this stipulation.

Officer Hattori testified that on August 8, 2014, around 11:15 p.m., he initiated a traffic stop of a vehicle driven by Wilson. The officer stated that Wilson's speech was slurred and mumbled and her eyes were red. Officer Hattori related that he asked Wilson if she would participate in a standardized field sobriety test (SFST), and she agreed.

The officer testified that he then administered the three tests that comprise the SFST: the horizontal gaze nystagmus (HGN) test, the walk-and-turn test, and the one-legged stand test. Officer Hattori testified that he observed a total of thirteen "validated clues" during the SFST, which he said demonstrated that Wilson was impaired. These included six clues on the HGN test, four on the walk-and-turn test, and three on

the one-legged stand test.  Based on her performance, Officer Hattori concluded that Wilson was "impaired to the point where it was unsafe for her to be operating a vehicle," and he therefore arrested Wilson for OVUII.

Officer Hattori testified that he transported Wilson to the Kīhei Police Station after she was arrested, where he informed her of the implied consent law and gave her a form on which to indicate whether she would submit to a breath or blood alcohol test.[6]  Wilson declined to submit to any test and marked the box on the form indicating that she had refused.[7]

Following Officer Hattori's testimony, the State rested its case-in-chief.  The defense called Joelle Lindly, Wilson's coworker, who was with Wilson on the night that she was arrested.  Lindly testified that after their shifts ended, she

---

[6]  The officer read Wilson the following from the implied consent form:

> 1. Any person who operates a vehicle upon a public way, street, road or highway or on or in the waters of the State shall be deemed to have given consent to a test or tests for the purpose of determining alcohol concentration or drug content of the person's breath, blood, or urine as applicable.
>
> 2. You may refuse to submit to a breath or blood test, or both, for the purpose of determining alcohol concentration and/or blood or urine test, or both, for the purpose of determining drug content.

[7]  Wilson initially marked the box indicating that she would submit to a breath alcohol test, but she then changed her mind and initialed and crossed out her first mark.

saw Wilson have one glass of wine at the bar and then leave to go home.

At the close of evidence, the court found Wilson guilty of both charges.  On the OVUII offense, the district court sentenced Wilson to 72 hours of community service, a $250 fine, a substance abuse evaluation, and a fourteen-hour substance abuse rehabilitation program.  On the refusal charge, Wilson was sentenced to pay $180 in fines and fees.  The court entered judgment on the same day.  Wilson filed a timely notice of appeal.

## II.    ICA PROCEEDINGS

On appeal, Wilson argued that the district court erred by not engaging her in a colloquy before accepting the stipulation as to Officer Hattori's qualifications.  Wilson contended that the stipulation was a waiver of her constitutional right to confrontation and that the district court was therefore required to determine whether the waiver was made knowingly and voluntarily.

Wilson asserted that, under our precedents, a trial court must engage in a colloquy with the defendant when the defendant waives a fundamental right--here, the right to confront a witness--to ensure that the waiver is being knowingly and voluntarily given.  (Citing Tachibana v. State, 79 Hawai'i 226, 900 P.2d 1293 (1995); State v. Murray, 116 Hawai'i 3, 169

P.3d 955 (2007).) Thus, she concluded that defense counsel's tactical decisions and trial strategy are not relevant in applying "the underlying rule that fundamental constitutional rights may only be waived by the defendant," and any cases that have suggested otherwise are no longer viable. (Citing State v. Casey, 51 Haw. 99, 101, 451 P.2d 806, 808 (1969).)

The ICA affirmed Wilson's OVUII conviction and held that the trial court was not required to engage in a colloquy with Wilson before accepting the stipulation regarding Officer Hattori's qualifications. State v. Wilson, 141 Hawai'i 459, 467, 413 P.3d 363, 371 (App. 2018). Relying on State v. El'Ayache, 62 Haw. 646, 618 P.2d 1142 (1980), the ICA reasoned that stipulations like the one in this case make the trial process more efficient and avoid "time-consuming and needless presentation of evidence on matters that are undisputed." Wilson, 141 Hawai'i at 467, 413 P.3d at 371. If trial courts were required to engage in a colloquy for every stipulation, the ICA stated, then the trial process would be burdened. Id. Additionally, the ICA asserted that if defendants were given veto power over every stipulation, such a process would "interfere with the role of defense counsel to exercise appropriate judgment in trial tactics and procedure." Id.

Next, the ICA reasoned that, under this court's decision in State v. Murray, a colloquy is required before a

7

court accepts an evidentiary stipulation only where the defendant stipulated to an essential element of the charged offense. Id. (citing Murray, 116 Hawaiʻi at 10-14, 169 P.3d at 962-66). The ICA explained that the stipulation regarding Officer Hattori's qualifications did not constitute an essential element of OVUII, but instead it was a stipulation that is routinely agreed to by parties to avoid unnecessary consumption of time. Id. The ICA also appeared to conclude that, even if the lack of colloquy was in error, Wilson failed to establish sufficient prejudice from the mistake to warrant vacating her convictions, stating, "Wilson makes no showing that absent the stipulation, the State would have been unable to establish Officer Hattori's qualifications to administer field sobriety tests."[8] Id.

### III. STANDARD OF REVIEW

The validity of a defendant's waiver of a constitutional right is a question of constitutional law. State

---

[8] The ICA also reversed Wilson's conviction for refusal pursuant to State v. Won, 137 Hawaiʻi 330, 372 P.3d 1065 (2015). Wilson, 141 Hawaiʻi at 466, 413 P.3d at 370. In discussing Won's applicability after the United States Supreme Court's decision in Birchfield v. North Dakota, 136 S. Ct. 2160 (2016), the ICA reasoned that "[i]f the Hawaiʻi Supreme Court adopted the Birchfield analysis in interpreting Article I, Section 7 of the Hawaiʻi Constitution, it would require overturning Won[.]" Wilson, 141 Hawaiʻi at 466, 413 P.3d at 370. However, the ICA stated that "[w]ithout additional guidance from the Hawaiʻi Supreme Court, we cannot say that Birchfield would alter the Hawaiʻi Supreme Court's analysis in Won." Id.

v. Ui, 142 Hawai'i 287, 292, 418 P.3d 628, 633 (2018). "We answer questions of constitutional law by exercising our own independent constitutional judgment based on the facts of the case. Thus, we review questions of constitutional law under the right/wrong standard." State v. Friedman, 93 Hawai'i 63, 67, 996 P.2d 268, 272 (2000) (quoting State v. Hanapi, 89 Hawai'i 177, 182, 970 P.2d 485, 490 (1998)).

## IV.    DISCUSSION

In her application for certiorari, Wilson argues that the ICA erred in concluding that the district court was not required to engage in a colloquy with her before accepting the stipulation regarding Officer Hattori's qualifications. She reasons that the right to confrontation is a fundamental right that cannot be waived by a defendant absent a colloquy with the trial court. Wilson argues that the defense counsel's stipulation effectively waived her ability to confront the officer as to whether he was properly trained and qualified to conduct the SFST, and that the ICA erred by holding that such a waiver may be made by defense counsel on a defendant's behalf as a matter of trial strategy.

We thus begin by considering the role of defense counsel in relation to a client when making tactical choices regarding the course of litigation. We then turn to the

colloquy requirement as it relates to evidentiary stipulations before examining the showing of prejudice required to warrant vacating a conviction when a trial court fails to engage a defendant in a required colloquy.

## A. The Role of Defense Counsel

In reaching its holding that the district court was not required to engage Wilson in a colloquy prior to accepting her stipulation, the ICA reasoned that "to give the defendant veto power over every stipulation agreed to by his or her counsel[] would burden the trial process and interfere with the role of defense counsel to exercise appropriate judgment in trial tactics and procedure." State v. Wilson, 141 Hawai'i 459, 467, 413 P.3d 363, 371 (App. 2018). In light of this statement, we provide guidance as to the appropriate allocation of authority between a defendant and defense counsel.

Any suggestion that stipulations involving tactics or procedure are the exclusive province of defense counsel in which a defendant plays little or no meaningful role is at odds with both the professional rules promulgated by this court and accepted best practices within the legal profession more generally.

The Hawai'i Rules of Professional Conduct (HRPC) repeatedly stress the importance of defense counsel's duty to consult with the defendant regarding strategic decisions at

trial.  HRPC Rule 1.2(a) (2014) states that defense counsel "<u>shall</u> abide by a client's decisions concerning the objectives of representation[] and . . . <u>shall</u> consult with the client as to the means by which the objectives are to be pursued." (Emphases added.)  This responsibility is reiterated by HRPC Rule 1.4(a)(2), which states that attorneys are required to "reasonably consult with the client about the means by which the client's objectives are to be accomplished."[9]

The American Bar Association's (ABA) standards for criminal defense provide similar guidance.  Under the ABA standards, "[s]trategic and tactical decisions should be made by defense counsel[] after consultation with the [defendant] where feasible and appropriate."[10]  ABA, Criminal Justice Standards for

---

[9]  In addition to our professional rules, the duty of defense counsel to consult with a defendant regarding trial strategy may inhere in the right to counsel guaranteed by Article I, section 14 of the Hawai'i Constitution and the Sixth Amendment of the United States Constitution.  <u>See</u> <u>Frazer v. South Carolina</u>, 430 F.3d 696, 707 (4th Cir. 2005) (reasoning that the Sixth Amendment requires counsel to consult with a client on important strategic decisions).

[10]  The commentary to the 1993 version of the standard, which contained identical wording, indicates the "where feasible and appropriate" language is an acknowledgement that some strategic and tactical decisions must be made "in circumstances that do not allow extended, if any, consultation."  ABA Standards for Criminal Justice: Prosecution Function and Defense Function, Standard 4-5.2 Commentary, at 200, 202 (3d ed. 1993).  The included history of the provision further clarifies that the language "was added . . . to reflect the fact that sometimes consultation is virtually impossible, e.g., in the middle of cross-examination."  <u>Id.</u> Standard 4-5.2 History of Standard, at 200.  Although a 2015 update of the standards has been published, commentary accompanying the standards has yet to be released as of the date of this opinion.  <u>See</u> ABA, Criminal Justice Standards for the Defense Function - Table of Contents, https://perma.cc/7TPY-ZDGU.

the Defense Function, Standard 4-5.2(d) (4th ed. 2015) (emphases added).  Such strategic decisions include "how to pursue plea negotiations, how to craft and respond to motions and, at hearing or trial, what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what motions and objections should be made, what stipulations if any to agree to,[11] and what and how evidence should be introduced." Id. (emphases added).  The commentary to the ABA standards notes that some tactical decisions "can be anticipated sufficiently so that counsel can ordinarily consult with the client concerning them."  ABA Standards for Criminal Justice: Prosecution Function and Defense Function, Standard 4-5.2 Commentary, at 202 (3d ed. 1993).

Consultation with the defendant serves many purposes: first, it protects the defendant's right to have the opportunity to participate in the defense; second, it allows defense counsel to hear the defendant's views and desires regarding the best course of action, which "are relevant considerations that must

---

[11]    Although the 2015 ABA Standards list the decision of whether to agree to stipulations as an example of a strategic decision to be ultimately made by defense counsel, the standards also make clear that "the decisions ultimately to be made by a competent client, after full consultation with defense counsel, include . . . any [] decision that has been determined in the jurisdiction to belong to the client."  ABA, Criminal Justice Standards for the Defense Function, Standard 4-5.2(b)(ix).  As discussed infra, Section IV.B, this court has held that some stipulations may affect a defendant's fundamental rights and that the final decision to enter into such a stipulation rests with the defendant.

be evaluated and taken into account by counsel"; third, it "promote[s] and maintain[s] a cooperative client-counsel relationship"; and fourth, if there is a difference in opinion between the defendant and defense counsel, it affords the defendant the opportunity to seek different representation. Gov't of Virgin Islands v. Weatherwax, 77 F.3d 1425, 1436-37 (3d Cir. 1996). Consultation with the defendant also helps defense counsel in the representation of the client because "[t]he process of thinking through alternative courses of action and explaining them to a client encourages self-scrutiny and fosters greater self-awareness of the factors influencing the lawyer's judgment, thereby improving [the lawyer's] decisionmaking." Mark Spiegel, Lawyering and Client Decisionmaking: Informed Consent and the Legal Profession, 128 U. Pa. L. Rev. 41, 104 (1979). Additionally, an informational imbalance occurs when defense counsel does not consult with the defendant. "While an attorney's education and experience give [the attorney] superior knowledge of generalized technical information, '[t]he client possesses superior knowledge of another sort--knowledge of the facts and circumstances of his case.'" Stano v. Dugger, 921 F.2d 1125, 1146 n.33 (11th Cir. 1991) (quoting Spiegel, supra, at 100) (alteration in original). Further, although the attorney will generally have more legal expertise, "the client[ has] superior knowledge of her own values," which potentially

makes the client "more competent[] than the lawyer" with respect to the goals of litigation.  Spiegel, supra, at 108-09.

Several state courts have also determined that defense counsel must consult with a defendant before making certain decisions that may be classified as "strategic" or "tactical." The Supreme Court of Delaware evaluated this issue when the defense counsel agreed to a supplemental jury charge without consulting with the defendant.  Bradshaw v. State, 806 A.2d 131, 134 (Del. 2002).  In Bradshaw, during jury deliberations, the judge convened with counsel to notify them that the jury was unable to make a decision.  Id. at 133-34.  After a brief search for the defendant at the courthouse was unsuccessful, the defense counsel agreed that the court would give the jury an Allen charge, which is "a request from a trial court to the jury to attempt to come to a decision in the case without abandoning any firmly held beliefs."  Id. at 134 (citing Holland v. State, 744 A.2d 980, 981-82 (Del. 2000) (citing Allen v. United States, 164 U.S. 492, 501 (1896))).

The Delaware Supreme Court held that the defendant's counsel had no authority to agree to an Allen charge in the absence of the defendant.  Id. at 137.  Although the court ultimately held that defendants have the fundamental right to be present at trial that "is personal to a defendant[] and may not be waived by that defendant's counsel," the court noted that

14

counsel could not have made the decision unilaterally even if this were not the case. Id. Under the Delaware Lawyers' Rules of Professional Conduct, the court reasoned, "a lawyer has a duty to reasonably consult with his or her client even as to trial tactics." Id. at 138 (citing Delaware Lawyer's Rules of Professional Conduct Rule 1.2).

Kansas has likewise held that defense counsel does not have unlimited authority in making tactical decisions. In State v. Nixon, on the morning that the trial judge was scheduled to render a verdict in the defendant's bench trial, the judge met in chambers with the defense counsel and the prosecutor to tell them that he overheard someone say that the defendant failed a lie detector test. 576 P.2d 691, 697 (Kan. 1978). The judge then said, "If defense counsel thinks that has prejudiced this Court, I'll declare a mistrial. Do you want a little time to think about it?" Id. The defense counsel responded, "I'm quite sure it played no part in your decision, and I would see no reason for the Court not to go right ahead." Id. The court then proceeded to convict the defendant on two of the three charged offenses. Id. at 692-93.

The Kansas Supreme Court vacated the defendant's convictions. Id. at 697-98. Although the court acknowledged that the statements "played no part in [the judge's] decision," it stated that "before waiving defendant's right to a mistrial

15

volunteered by the trial court, defendant should have been consulted by counsel and given an opportunity to consider the alternatives." Id. The court held that, regardless of whether defense counsel's decision "could very well be [classified] as a matter of trial strategy," the defendant was still required to be consulted. Id. This is because, as the Nixon court stated, even those "strategic and tactical decisions" that are the "province of the lawyer" are to be made only "after consultation with [the lawyer's] client." Id. (citing ABA Standards for Criminal Justice: Defense Function, § 5.2) (emphasis added)). Thus, the Kansas Supreme Court held that a defense counsel cannot reject a mistrial when offered by the trial court without consulting with the defendant. Id.

These authorities demonstrate that strategic decisions at trial are not solely within the province of defense counsel's "appropriate judgment." Certainly defense counsel is responsible for developing a trial strategy, but in doing so "defense counsel undoubtedly has a duty to discuss potential strategies with the defendant." Florida v. Nixon, 543 U.S. 175, 178 (2004). This duty of course includes consulting with the defendant regarding those evidentiary stipulations that we have held necessitate a colloquy because they constitute waivers of fundamental rights. See infra Section IV.B. But an attorney's duty to consult with a client extends far beyond these limited

16

circumstances for, as we have held, "every decision to stipulate to evidence in a case may be considered within the bounds of . . . trial strategy." State v. Ui, 142 Hawaiʻi 287, 295, 418 P.3d 628, 636 (2018).

Even when a stipulation does not implicate fundamental rights, it may establish a substantive fact that could weigh on the outcome of the case. It would be against the great weight of authority for a defense counsel not to consult with the defendant on a decision with such implications. See HRPC Rules 1.2(a), 1.4(a)(2); ABA, Criminal Justice Standards for the Defense Function, Standard 4-5.2(d). Insofar as the ICA's statement could be interpreted to suggest that defense counsel has unilateral authority to determine matters of "tactics and procedure" without consultation with the defendant, we now clarify that defense counsel has a duty to consult with the defendant before making strategic decisions when it is feasible and appropriate to do so, including before entering into an evidentiary stipulation.

### B. The Colloquy Requirement

"It is well settled in Hawaiʻi law that a defendant relinquishes fundamental rights only when a waiver is undertaken intelligently, knowingly, and voluntarily." Ui, 142 Hawaiʻi at 293, 418 P.3d at 634 (citing State v. Murray, 116 Hawaiʻi 3, 10-

17

11, 169 P.3d 955, 962-63 (2007)).  Before accepting the waiver

of a fundamental right, a trial court must engage in an on-the-

record colloquy with the defendant.  Id.  This court has

determined that the right to counsel, Carvalho v. Olim, 55 Haw.

336, 342-43, 519 P.2d 892, 897 (1974), the right to trial by

jury, State v. Ibuos, 75 Haw. 118, 121, 857 P.2d 576, 578

(1993), and the right of a defendant to testify, Tachibana v.

State, 79 Hawai'i 226, 236, 900 P.2d 1293, 1303 (1995), are

fundamental rights that require an on-the-record colloquy with

the defendant before a trial court can accept a waiver.

As the ICA recognized, a trial court must also engage

in a colloquy with a defendant before it accepts a stipulation

to an element of a charged offense because this amounts to a

waiver of the fundamental due process right to have all elements

of an offense proven beyond a reasonable doubt.[12]  Murray, 116

Hawai'i at 12, 169 P.3d at 964.  In State v. Ui, which involved

defense counsel's stipulation to facts that had the effect of

establishing an element of the charged offense, we expressly

rejected a "trial strategy" exception to the colloquy

requirement, reasoning that such an exception would "ultimately

swallow the colloquy rule" because "every decision to stipulate

---

[12]     Article I, section 5 of the Hawai'i Constitution states in
relevant part, "No person shall be deprived of life, liberty or property
without due process of law."

to evidence in a case may be considered within the bounds of [a] trial strategy exception." 142 Hawai'i at 295, 418 P.3d at 636; see also Tachibana, 79 Hawai'i at 232, 900 P.2d at 1299 ("[A] defendant's personal constitutional right to testify truthfully in his [or her] own behalf may not be waived by counsel as a matter of trial strategy." (quoting United States v. Moody, 977 F.2d 1425, 1431 (11th Cir. 1992)) (second alteration in original)). Thus, Ui reaffirmed the long-standing principle that a colloquy is required when a stipulation "goes beyond the bounds of trial tactics and procedure, and impinges significantly on constitutionally guaranteed right." State v. Casey, 51 Haw. 99, 101, 451 P.2d 806, 808-09 (1969). In such instances, the waiver "must be the personal action of the beneficiary of right"--and not of counsel. Id.

Wilson argues that the stipulation was not a waiver of the right to have every element of an offense proven beyond a reasonable doubt but rather of a different fundamental right-- her right to confront witnesses against her.[13] To be sure, we have held that some evidentiary stipulations may so inherently implicate a defendant's confrontation rights as to require a

---

[13] Article I, section 14 of the Hawai'i Constitution states in relevant part, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against the accused."

colloquy to confirm the defendant has knowingly, voluntarily, and intelligently acquiesced in the decision.

In State v. Casey, for instance, a husband and wife that were represented by the same counsel were charged separately with the same offense, and their cases were consolidated for a bench trial. 51 Haw. at 100, 451 P.2d at 808. The wife failed to appear on the morning of the trial, and the court proceeded to try the husband alone, concluding shortly before noon. Id. When the wife then appeared that afternoon, defense counsel stipulated that all of the evidence presented by both the defense and prosecution during the husband's trial would be the same evidence presented during the wife's trial if it were to proceed. Id. The court accepted the stipulation without engaging the wife in a colloquy and proceeded to find both the husband and wife guilty. Id. As with a stipulation to facts establishing an element of an offense in Ui, this court held on review that the stipulation went beyond the bounds of mere trial tactics and strategy to impinge on the wife's constitutional right to confrontation, and a colloquy was therefore required. Id. at 102, 451 P.2d at 809.

The ICA's opinion here stated that stipulations like the one in this case "serve to make the trial process more efficient by avoiding time-consuming and needless presentation of evidence on matters that are undisputed." Wilson, 141 Hawaiʻi

20

at 467, 413 P.3d at 371. And, as related, the ICA reasoned that "giv[ing] the defendant veto power over every stipulation agreed to by his or her counsel[] would burden the trial process and interfere with the role of defense counsel to exercise appropriate judgment in trial tactics and procedure." Id. Under Ui and Casey, the determination of whether a stipulation relates to "trial strategy or tactics" is irrelevant when the stipulation sufficiently infringes on a defendant's constitutional rights, and we now hold that efficiency and the perceived "burden" on the trial process are similarly immaterial.

Nevertheless, the stipulation in this case did not establish facts satisfying any elements of the charged offense. To convict Wilson of OVUII, the State was required to prove that she operated a vehicle "while under the influence of alcohol in an amount sufficient to impair [her] normal mental faculties or ability to care for [herself] and guard against casualty." HRS § 291E-61(a)(1). Stipulating that the officer was "qualified and certified to conduct the [SFST] and that he received specialized training in administering and grading all of the [SFSTs]" is not in itself proof that Wilson was operating a vehicle or that she was impaired. Thus, the stipulation in this case did not amount to a waiver of Wilson's fundamental right to

have every element of a charged offense proven beyond a reasonable doubt.

Neither did the stipulation significantly impinge on Wilson's confrontation rights. Unlike the evidentiary stipulation at issue in Casey, the stipulation in this case did not serve as a substitute for evidence from which a factfinder could conclude that any element of the charged offenses was satisfied in whole or in part. Instead, this stipulation was to an evidentiary foundation involving the qualifications of a witness.[14] Under the circumstances, we cannot say that the stipulation so infringed upon Wilson's right to confront Officer Hattori that a colloquy was required.

The ICA thus correctly concluded that the district court did not err in failing to engage in a colloquy with Wilson before accepting the stipulation as to Officer Hattori's qualifications.[15] Wilson, 141 Hawai'i at 467, 413 P.3d at 371.

---

[14] The fact that the stipulation was solely to an evidentiary foundation is not dispositive. Evidentiary foundations can greatly differ in importance from case to case, and stipulating to certain foundational facts in a case may implicate a defendant's fundamental rights. A trial court would likely need to engage the defendant in a colloquy prior to accepting a stipulation to the accuracy of a DNA test indicating the defendant was the party responsible for a crime, for example.

[15] In reaching its conclusions, the ICA relied in part on State v. El'Ayache, 62 Haw. 646, 647, 618 P.2d 1142, 1143 (1980), in which defense counsel stipulated that if called to the stand, two potential witnesses would testify that they had observed the defendant put items of clothing in a handbag and leave their employer's store without paying for the items. Wilson, 141 Hawai'i at 467, 413 P.3d at 371. The El'Ayache court concluded that the trial court did not err in admitting the stipulation without

(continued . . .)

22

## C. Determining Prejudice

Although the ICA correctly held that a colloquy was not required in this case, the ICA appears to have set forth an alternative holding that established a new test for evaluating whether the lack of a required colloquy sufficiently prejudiced a defendant to warrant vacating a conviction.  After a brief discussion of Murray, the ICA stated, "Wilson makes no showing that absent the stipulation, the State would have been unable to establish Officer Hattori's qualifications to administer field sobriety tests."  Wilson, 141 Hawaiʻi at 467, 413 P.3d at 371. Thus, the ICA decision suggests that when a trial court errs by failing to conduct a required colloquy prior to accepting an evidentiary stipulation, the error will not justify a new trial unless the defendant can demonstrate that the State would have been unable to establish the substance of the stipulation through other evidence.

_____

(. . . continued)

conducting a colloquy because the defendant's right to confrontation "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process" such as "the right of defense counsel to make an appropriate judgment on the trial tactics and procedure."  62 Haw. at 649, 618 P.2d at 1144.  The stipulation in El'Ayache was to the testimony of the witnesses that would establish the elements of the charged offense.  The reasoning of El'Ayache is thus questionable in light of our prior holding in Casey that a colloquy is required when a stipulation significantly impinges upon a defendant's fundamental right to confront witnesses.

23

Our law is well-established that the failure of a trial court to deliver a constitutionally required colloquy is evaluated under the harmless beyond a reasonable doubt standard, under which appellate courts must determine "whether there is a reasonable possibility that error might have contributed to [the] conviction." State v. Eduwensuyi, 141 Hawaiʻi 328, 336, 409 P.3d 732, 740 (2018) (quoting State v. Han, 130 Hawaiʻi 83, 93, 306 P.3d 128, 138 (2013)). If such a reasonable possibility exists, then "the judgment of conviction on which it may have been based must be set aside." State v. Gano, 92 Hawaiʻi 161, 176, 988 P.2d 1153, 1168 (1999) (quoting State v. Pulse, 83 Hawaiʻi 229, 248, 925 P.2d 797, 816 (1996)). And in making this evaluation, the burden is not on the defendant to prove that the error could have affected the outcome of the case but rather on the State to prove that it could not have. See State v. Chin, 135 Hawaiʻi 437, 449, 353 P.3d 979, 991 (2015) ("[T]here was no showing by the State that such misconduct was harmless beyond a reasonable doubt."); Han, 130 Hawaiʻi at 93, 306 P.3d at 138 ("[T]hus the burden rests on the State to establish 'the violation was harmless beyond a reasonable doubt.'" (quoting Tachibana, 79 Hawaiʻi at 240, 900 P.2d at 1307)).

Rather than consider whether the State has demonstrated that the stipulation could not have affected the

24

outcome of the case, the ICA's test appears to evaluate whether the defendant has established that the State would have been unable to prove the stipulated fact that was erroneously accepted by the court.  This novel approach would impermissibly shift the burden of demonstrating prejudice onto the defendant, and it is inconsistent with our case law.  We thus hold that the ICA's newly-created test should not be employed in any instance in which a trial court has failed to engage the defendant in a required colloquy.[16]

### V.   CONCLUSION

Based on the foregoing, the ICA's February 28, 2018, Judgment on Appeal and the district court's August 27, 2015,

---

[16]     Although the issue was not raised in Wilson's application, we note that in reversing Wilson's conviction for refusal pursuant to State v. Won, 137 Hawaiʻi 330, 372 P.3d 1065 (2015), the ICA expressed doubt about Won's continued validity in the wake of the U.S. Supreme Court's decision in Birchfield v. North Dakota, 136 S. Ct. 2160 (2016).  See Wilson, 141 Hawaiʻi at 465-66, 413 P.3d at 369-70.  In Birchfield, the U.S. Supreme Court held that "the Fourth Amendment [to the United States Constitution] permits warrantless breath tests incident to arrests."  136 S. Ct. at 2184 (emphasis added).  As the ICA recognized, "the Hawaiʻi Supreme Court is free to give broader protection under the Hawaiʻi Constitution than given by the United States Constitution."  Wilson, 141 Hawaiʻi at 466, 413 P.3d at 370.  This court clearly did so in Won, in which we held that the search incident to arrest exception to the warrant requirement is inapplicable to intoxilyzer tests under the Hawaiʻi Constitution.  See Won, 137 Hawaiʻi at 339 n.23, 372 P.3d at 1074 n.23.  Birchfield did not undermine this conclusion, which was predicated on long-standing principles regarding the parameters of the search incident to arrest exception under the Hawaiʻi Constitution.  See id. at 353 n.45, 372 P.3d at 1088 n.45 (citing State v. Kaluna, 55 Haw. 361, 367, 369-70, 520 P.2d 51, 57-59 (1974)).  The ICA's uncertainty regarding Won was thus unwarranted.

Entry of Judgment are affirmed but based upon the reasons set forth in this opinion.

Jacqueline R. Maʻele
for petitioner

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

