Terrence BRADSHAW, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 345, 2001.

Supreme Court of Delaware.

Submitted: May 14, 2002.
Decided: June 13, 2002.

Robert M. Goff, Jr., Office of the Public Defender, Wilmington, Delaware, for appellant.

Thomas E. Brown, Department of Justice, Wilmington, Delaware, for appellee.

BEFORE: VEASEY, Chief Justice, HOLLAND and STEELE, Justices.

VEASEY, Chief J.

In this appeal from the Superior Court we consider whether there was plain error when the defendant was absent from the courtroom both at the time his counsel, without authority, agreed to allow the trial court to give an *Allen* charge [1] to a deadlocked jury and also when the charge was actually given. We hold that the absence of the defendant was a violation of the right granted by Rule 43 of the Delaware Superior Court Rules of Criminal Procedure to be present "at every stage of the

---

1. *See Allen v. United States,* 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528 (1896) (authorizing a supplemental instruction encouraging a deadlocked jury to try to reach a verdict).

trial...."[2] Furthermore, the defendant's counsel was incapable of waiving this right for him, and the defendant's absence for fifteen minutes at the end of a full day of jury deliberation does not constitute a personal waiver of this right.

The defendant was prejudiced by this error. First, he could well have had valuable input into the decision whether to give the *Allen* charge. Second, the fact that the jury was able to view his empty chair at this critical moment in their deliberations was inherently prejudicial. Accordingly, we reverse the judgment of the Superior Court and remand for a new trial.

### *Facts*

The State charged Terrence Bradshaw, defendant below and appellant, with two counts of third degree rape[3] and one count of second degree unlawful sexual contact[4] for an incident involving Cassandra Winthrop,[5] the 12-year-old victim in this case. The State tried Bradshaw before a jury in Superior Court on May 1 and 2 of 2001.

Winthrop testified that in January of 2000 she went to the Days Inn hotel in New Castle with a group of people, one of whom was Bradshaw. They went to a room on the third floor. When they entered the room, Winthrop testified that she lay on one of the beds and Bradshaw lay on top of her. She testified that he took off her clothes and touched her vagina; that he removed his pants, put on a condom, and engaged in vaginal intercourse with her; and that he put his penis in her mouth. A manager at the Days Inn hotel testified that business records showed that Bradshaw had registered for Room 308 on January 28, 2000.

On cross-examination, Bradshaw's counsel elicited the fact that Winthrop had told the police that they had not engaged in oral sex. He also elicited the fact that she had initially told her mother about the incident because she had become symptomatic for genital herpes.

Bradshaw testified in his defense. He denied having registered at the Days Inn hotel on January 28, 2000. He testified that the address listed on the Days Inn receipt was outdated and from an old identification card that he had lost. He also denied knowing or having had sexual intercourse with Winthrop. He testified that he had tested negative for genital herpes since the alleged encounter with Winthrop.

The jury retired for deliberations at 4:05 P.M. on May 2 and went home at 5:24 P.M. Before they left for the evening, the jury asked the Superior Court three questions about whether there was any other evidence that Bradshaw was at the hotel that evening, including, "Is there a signature from January 28th, 2000, that could have been checked?" The court responded, "The Court cannot comment on the evidence." The jury returned to the court to continue their deliberations at 9:30 A.M. the following morning. At 3:10 P.M., the Superior Court received a note from the jury stating, "Dear Judge: We are unable to make a decision. Thanks." At 3:17 P.M., the court convened the parties, with the exception of Bradshaw himself, who apparently was not immediately to be

---

**2.** Super.Ct.Crim.R. 43(a).

**3.** 11 *Del.C.* § 771(a)(1).

**4.** 11 *Del.C.* § 768.

**5.** This Court has sua sponte assigned a pseudonym to protect this underage victim's true

identity. *See* Supr.Ct.R. 7(d) ("[T]he Court may order the use of pseudonyms sua sponte."); *Trump v. State*, 753 A.2d 963, 965 n. 1 (Del.2000) (assigning a pseudonym to protect an underage victim's true identity in an unlawful sexual intercourse case).

found at that moment in the vicinity of the courtroom.

The State requested an *Allen* charge. This is a request from a trial court to the jury to attempt to come to a decision in the case without abandoning any firmly held beliefs.[6] The trial judge then observed that this was a two-day trial and "not a murder trial," and that "it's my experience that in such cases, an *Allen* Charge is probably not going to be fruitful."

The trial judge asked whether there was a "request for an *Allen* Charge." Bradshaw's counsel responded to this question, voicing his discomfort at proceeding without his client, who could not be immediately located. His counsel claimed that Bradshaw had been at the courthouse all day, and that he had seen him an hour before. Bradshaw's counsel speculated that he could have gone out "to get a bite to eat...."

Both Bradshaw's counsel and the bailiff looked for Bradshaw unsuccessfully. After a very brief search for Bradshaw, his counsel made an "independent decision to join the prosecutor's request for an *Allen* Charge...." He stated, "I can't imagine that the case would, from the defense perspective, go any better than it did on the occasion of this trial." The jury then entered the courtroom at 3:25 P.M., fifteen minutes after the jury's note to the trial judge and eight minutes after the Superior Court reconvened. The trial judge then polled the jury to see whether further deliberations might be fruitful. A number of people indicated that it would not.

Some, however, did not respond. The trial judge then gave an *Allen* charge to the jury. Bradshaw was not present for the reading of the *Allen* charge to the jury. At 1:50 P.M. on May 4, the jury reconvened and returned a verdict of not guilty on one of the rape counts and guilty on the other two charges.

### The Right to be Present Under Rule 43

A defendant's right to be present at his own trial has two dimensions: a constitutional one and one based on the Delaware Superior Court Rules of Criminal Procedure. The United States Supreme Court has ruled that due process guarantees a defendant's right to be personally present "whenever [the defendant's] presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge."[7] In applying this test, courts ask whether the defendant could personally "give advice or suggestion or even [decide] to supersede his lawyers altogether and conduct the trial himself."[8] Thus, a defendant's constitutional right to be present wanes when pure questions of law are discussed and waxes when his or her personal knowledge becomes germane.[9]

This Court need not decide whether Bradshaw's absence was a constitutional violation, however, because it was a violation of Superior Court rules. Rule 43 of the Delaware Superior Court Rules of Criminal Procedure requires a defendant to be present "at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and

**6.** See *Holland v. State*, 744 A.2d 980, 981–82 (Del.2000) (calling it "a supplemental instruction encouraging the jury to reach a verdict") (citing *Allen v. United States*, 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528 (1896)).

**7.** *Snyder v. Massachusetts*, 291 U.S. 97, 105–06, 54 S.Ct. 330, 78 L.Ed. 674 (1934).

**8.** *Id.* at 106, 54 S.Ct. 330.

**9.** See *United States v. Graves*, 669 F.2d 964, 972 (5th Cir.1982) (holding that defendants do not have the right to attend proceedings concerning a "purely legal matter" such as "jury instructions").

the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule." [10] Rule 43 does not require a defendant's presence "[a]t a conference or argument upon a question of law." [11] This rule was modeled after Federal Rule of Criminal Procedure 43,[12] so precedent regarding that rule is germane.

 The giving of an *Allen* charge to a jury is a "stage of the trial," a stage wherein a trial court encourages the jury to continue deliberations. An *Allen* charge takes place after "the impaneling of the jury" but before "the return of the verdict." [13] These are the two examples set forth in Rule 43 to delineate the bounds of a defendant's right to be present. Federal courts have held that giving an *Allen* charge to a jury implicates the federal version of Rule 43.[14] Furthermore, this was not "a conference or argument upon a question of law." [15] As we discuss more fully below,[16] the defendant's decision whether to agree to or resist the giving of an *Allen* charge implicates a choice whether a defendant likes his chances with this trial or with a new one. That is not an "argument on a question of law," but a basic question of trial objectives to which a defendant can reasonably be expected to contribute.

Moreover, Bradshaw was not in the courtroom when the trial judge actually gave the *Allen* charge to the jury. This, quite apart from the decision to give the *Allen* charge, certainly did not implicate the Rule 43 exceptions pertaining to conferences in chambers about the proper application of legal principles. Rather, the defendant's absence, observable by the jury during the giving of the *Allen* charge, is an operative fact that raises the issue of prejudice.

### *Waiver of the Right to be Present*

 A defendant may normally waive a right either personally or through his or her counsel. The common law exhibited a strong presumption against the waiver of the right to be present in criminal cases.[17] "It was thought 'contrary to the dictates of humanity to let a prisoner "waive that advantage to which a view of his sad plight might give him by inclining the hearts of the jurors to listen to his defence with indulgence." ' " [18] Both the federal Rule 43 and its Delaware equivalent have, however, since modified this rule.

 We will first address whether Bradshaw waived his right to be present personally. Waiver is the intentional relinquishment of a known right [19] and it can

10. Super.Ct.Crim.R. 43(a).

11. Super.Ct.Crim.R. 43(c)(3).

12. Fed.R.Crim.P. 43.

13. Super.Ct.Crim.R. 43(a).

14. *United States v. Giacalone*, 588 F.2d 1158, 1165 (6th Cir.1978) (concluding that it was "technically in error" for the judge to give an *Allen* instruction when neither defendant nor defense counsel were present, but concluding that there was no prejudice); *United States v. Wilburn*, 549 F.2d 734, 737–38 (10th Cir. 1977) (concluding implicitly that Rule 43 applied to the giving of an *Allen* instruction, but that the defendant had failed to show prejudice "[i]n the circumstances of the case").

15. Super.Ct.Crim.R. 43(a)(3).

16. *Infra* notes 46–50 and text accompanying.

17. *See Crosby v. United States*, 506 U.S. 255, 259, 113 S.Ct. 748, 122 L.Ed.2d 25 (1993) ("The right generally was considered unwaivable in felony cases.").

18. *Id.* (quoting F. Wharton, Criminal Pleading and Practice 388 (9th ed. 1889) (quoting *Prine v. Commonwealth*, 18 Pa. 103, 104 (Pa. 1851))).

19. *Warner v. State*, 787 A.2d 101, 2001 WL 1512985 at *1–2, 2001 Del. LEXIS 489, at *3–4 (Del.Supr.) (requiring the "intentional relinquishment or abandonment of a known

either be express or implied. Rule 43(c)(2) addresses express waiver, and allows it if the consent is "written" and if the potential punishment does not exceed one year in prison.[20] There is no evidence here that Bradshaw expressly waived his right to be present. Rule 43(b) addresses implied waiver, providing, "The further progress of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, initially present ... [i]s voluntarily absent after the trial has commenced...." [21] Federal courts have interpreted the comparable federal rule to require both that a defendant's absence be "voluntary" and that it be significant enough to impede "[t]he further progress of the trial...." [22]

We cannot say on this record that Bradshaw's absence was voluntary in the sense that it constituted a knowing waiver of his right to be present at trial. In the Rule 43 scenario in which a defendant "flees from a courtroom in the midst of a trial—where judge, jury, witnesses and lawyers are present and ready to continue—" waiver is implied because a reasonable defendant would "know that as a consequence the trial could continue in his absence." [23] Here, the trial judge waited fifteen minutes before proceeding. Furthermore, this was not the presentation stage of the trial—the jury had been deliberating uneventfully for almost the entire day. Fi-

nally, the record is not inconsistent with the supposition that Bradshaw was taking a long restroom break, or that he was getting food. There is no basis in this record to infer that Bradshaw would have known that his actions would constitute waiver of his right to be present.

Furthermore, we cannot say that Bradshaw's absence prevented "[t]he further progress of the trial...." [24] When a defendant is voluntarily absent, federal courts have considered a list of factors in determining whether the trial should proceed without a defendant, including "the likelihood that the trial could soon take place with the defendant present; the difficulty of rescheduling; ... [and] the burden on the Government." [25] There was no evidence that the trial judge or counsel on either side even touched upon these commonsense considerations.

Here, the jury had already been deliberating most of the day. The court could have waited longer for Bradshaw that afternoon, or it could have continued proceedings until the next day. Indeed, the jury deliberated into the following afternoon in any event. Then the proceedings could have taken place with Bradshaw, and both the burden on the State and the difficulties of rescheduling would have been minimal. Cases finding implied waiver upon voluntary absence usually involve absences of a whole day or more,[26] or where the defendant can be said to have

right") (citing *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)).

20. Super.Ct.Crim.R. 43(c)(2).

21. Super.Ct.Crim.R. 43(b).

22. *United States v. Benavides*, 596 F.2d 137, 139 (5th Cir.1979).

23. *United States v. Taylor*, 478 F.2d 689, 691 (1st Cir.1973).

24. Super.Ct.Crim.R. 43(b).

25. *United States v. Tortora*, 464 F.2d 1202, 1210 (2d Cir.1972).

26. *See, e.g., United States v. Martinez*, 604 F.2d 361, 365 (5th Cir.1979) (finding waiver when the defendant was absent between a luncheon and afternoon recess, the trial court lectured him on the importance of his presence, and then he disappeared again from the following morning until the end of trial).

"fled." [27] Even extreme cases finding waiver are distinguishable.[28] We need not determine how long the trial judge should have waited. It is sufficient to say that she did not wait long enough in this case.

 Bradshaw's counsel affirmatively joined the State's request for an *Allen* charge. But he had no authority to do so. When counsel for a defendant expressly waives an objection, instead of merely not making one, this Court generally may not exercise review.[29] Action by a defendant's counsel, however, may not constitute waiver when a defendant must personally waive a right.[30] The general rule is that

the right to be present is a right that is personal to a defendant, and may not be waived by that defendant's counsel.[31]

Some courts hold that counsel may waive this right in misdemeanor cases,[32] while others hold that such waivers are effective only in misdemeanor cases that do not involve possible imprisonment.[33] All three of Bradshaw's charges were felonies. The State has not pointed out, and this Court has not discovered, any case that would permit counsel to waive a defendant's right to be present under the circumstances of this case.

In *Crosby v. United States*,[34] the United

---

27. See *Taylor v. United States*, 414 U.S. 17, 20, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973) (finding waiver when a defendant fled his trial after the morning session).

28. See *United States v. Warme*, 572 F.2d 57, 60–61 (2d Cir.1978) (finding waiver when defendant was several hours late even when counsel explained that the defendant had rushed his wife, who was having medical problems, to the hospital); *United States v. Davis*, 486 F.2d 725, 726–27 (7th Cir.1973) (finding waiver when a defendant was 25 minutes late for the presentation portion of his trial when he got "caught by a train").

29. *Bullock v. State*, 775 A.2d 1043, 1061 (Del. 2001) (Walsh, J., dissenting). *But see Shelton v. State*, 744 A.2d 465, 497 (Del.2000) (deciding to "waive the waiver rule").

30. See *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (observing that whether a defendant must personally participate in the waiver depends on "the right at stake").

31. See *Garcia v. State*, 492 So.2d 360, 363 (Fla.1986) ("It is also true that counsel's waiver of a defendant's absence at a crucial stage of a trial, without acquiescence or ratification by the defendant, is error."); *Midgett v. State*, 216 Md. 26, 139 A.2d 209, 214–15 (1958) ("[T]he right to be present is personal to the accused and cannot be waived by his counsel."); *Scott v. State*, 113 Neb. 657, 204 N.W. 381, 381 (1925) ("Defendant has a right to be present at all times when any proceed-

ing is taken during the trial, from the impaneling of the jury to the rendition of the verdict, inclusive, unless he has waived such right; and, it being a personal right to the defendant, the waiver thereof, if permitted, must be by him personally, and not by his attorneys."); 21A Am.Jur.2d *Criminal Law* § 1136 (1998) ("According to some authorities, the right to be present at his trial . . . can be waived only by a defendant personally . . . . [while] [o]ther courts hold that although waiver by counsel is not absolutely precluded, it is not binding on the defendant unless made in his presence or by his express authority or unless subsequently acquiesced in by him.")

32. See *Harriet Cotton Mills v. Textile Workers Union*, 251 N.C. 218, 111 S.E.2d 457, 463–64 (1959) ("In this jurisdiction, the more important privilege of being present in person, so as to confront one's accusers on trial for a criminal offense, may, in felonies other than capital, be waived by defendant himself, but not by his counsel, while in misdemeanors such waiver may be made through counsel with the consent of the court.").

33. See *Cole v. State*, 35 Okla.Crim. 50, 248 P. 347, 348 (1926) ("In a misdemeanor case, as here, where the punishment may be imprisonment as well as a fine, the accused may waive the right to be present, but the right to waive is personal and can be exercised only by accused.").

34. 506 U.S. 255, 113 S.Ct. 748, 122 L.Ed.2d 25 (1993)

States Supreme Court ruled that the federal version of Rule 43 contains an exclusive list of the ways in which the right to be present may be waived.[35] Delaware Rule 43 provides that a defendant's presence is "required . . . except as otherwise provided by this rule." [36] Although Rule 43 provides for a defendant's written waiver under certain circumstances,[37] it makes no provision for a waiver by counsel. The implication, at least, is that counsel cannot waive this right.

■■■ The Delaware Lawyers' Rules of Professional Conduct also suggest that Bradshaw's counsel did not have the authority to waive this right. Rule 1.2(a) states, "A lawyer shall abide by a client's decisions concerning the objectives of representation . . . and shall consult with the client as to the means by which they are to be pursued." [38] In a criminal case, Rule 1.2(a) states that a lawyer "shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify." [39] In distinguishing between "objectives" and "means," the Annotated Model Rules of Professional Conduct distinguish between certain fundamental rights in a criminal case and "decisions that involve tactics and trial strategy." [40] These fundamental rights may include the rights specified in Rule 1.2(a) as well as others, including the decision to forego other appeals and accept the death penalty,[41] whether to waive counsel,[42] and whether to appeal.[43] Given the strong common law presumption against waiver of the right to be present, it would seem that this is such a right as well. The decision to deny the jury "a view of the defendant's sad plight," [44] or to choose to encourage this jury to come to a decision rather than to prefer a new trial, seems as fundamental as the decision whether to waive a jury trial. Moreover, a lawyer has a duty to reasonably consult with his or her client even as to trial tactics and strategy.[45] Here, the State conceded at oral argument in this Court that there was no valid reason why Bradshaw's counsel could not have waited to consult with his client before proceeding.

### Prejudice and a Defendant's Absence from an Allen Charge

■■■ The next question is whether Bradshaw was prejudiced by the violation

---

35. *Id.* at 258–59, 113 S.Ct. 748 ("The list of situations in which the trial may proceed without the defendant is marked as exclusive . . . by the express use of a limiting phrase.") (citing Fed.R.Crim.P. 43 ("The defendant shall be present . . . at every stage of the trial . . . *except as otherwise provided* by this rule. . . .") (emphasis added)).

36. Super.Ct.Crim.R. 43(a).

37. Super.Ct.Crim.R. 43(c)(2).

38. Prof.Cond.R. 1.2(a).

39. *Id.*

40. Ann. Model Rules of Prof'l Conduct R. 1.2 cmt. at 19–20 (3d ed.1996).

41. *Red Dog v. State,* 625 A.2d 245, 247–48 (Del.1993).

42. *Faretta v. California,* 422 U.S. 806, 814–15, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

43. *Fay v. Noia,* 372 U.S. 391, 439–40, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

44. *Crosby v. United States,* 506 U.S. 255, 259, 113 S.Ct. 748, 122 L.Ed.2d 25 (1993).

45. *See* Prof.Cond.R. 1.2(a) (providing that a lawyer "shall consult with the client as to the means by which [the objectives of representation] are to be pursued"); Ann. Model Rules of Prof'l Conduct R. 1.2 cmt. at 20 (3d ed. 1996) ("[D]ecisions that involve tactics and trial strategy are reserved for the professional judgment of the lawyer after consultation with the client.").

of his Rule 43 right to be present. It is important to note that Bradshaw was absent for two conceptually distinct stages of his trial. The first was the decision whether to give the jury the *Allen* instruction. The second was the actual reading of the *Allen* instruction to the jury when the defendant was not present. Each stage involves a separate prejudice analysis.

Before a discussion of the former, it is instructive to consider the *Allen* charge itself. This is a request from a trial court to the jury to attempt to come to a decision in the case without abandoning any firmly held beliefs.[46] This charge is often helpful in persuading the jury to come to a unanimous verdict, and is sometimes controversial.[47] Delaware follows the majority rule in permitting trial courts to give *Allen* charges.[48] It is hard to believe that Bradshaw's presence, as distinct from that of his counsel, would have influenced the wording of *Allen* charges. That is indeed a "question of law."[49] In the circumstances of this case, however, there was a significant possibility that the trial judge might have refused to give the instruction altogether in the face of a reasoned objection by the defendant. The trial judge apparently doubted that an *Allen* charge would do any good. Furthermore, even after the State had expressed a desire to give one, the trial judge asked Bradshaw's counsel whether there was "any request" for one, and Bradshaw's counsel eventually made that request.

Also, when the trial judge asked the jurors whether further deliberations would be helpful, none answered that they would. If Bradshaw's counsel had argued that this was an unambiguous indication that the jury was hopelessly deadlocked, it is also possible that the trial judge would have accepted that argument. Had the jury continued to be deadlocked and a mistrial declared, a new trial could well have produced a different outcome. It is at least possible, given the victim's credibility issues and Bradshaw's testimony, that a jury in any new trial would have concluded that there was reasonable doubt of Bradshaw's guilt and acquitted him.

This decision is one on which a defendant's input would be helpful to his counsel.[50] From a defendant's perspective, whether to give an *Allen* charge is a basic, fundamental choice between a verdict on this trial or a new trial. A defendant may well be in as good a position as his lawyer to know whether his case might go better at a second trial. He would know how likely it is that he might discover additional evidence. He might have input into how he and all the witnesses came across to the

---

46. *Supra* note 6.

47. *See generally Ralls v. Manson*, 375 F.Supp. 1271, 1294–96 (D.Conn.1974) (noting that it is often called the "dynamite" charge because of its effectiveness in dislodging minority viewpoints among jurors, and noting criticism of the charge), *rev'd*, 503 F.2d 491, 498–99 (2d Cir.1974).

48. *Fensterer v. State*, 493 A.2d 959, 967 (Del. 1985).

49. *See* Super.Ct.Crim.R. 43(c)(3) (failing to require a defendant's presence for a "conference or argument upon a question of law"); *cf. Krische v. Smith*, 662 F.2d 177, 179–80

(2d Cir.1981) (holding that the denial of the right to presence of the defendant *and his counsel* was prejudicial when the judge instructed a jury to continue deliberations as "It's not soon enough" because "[t]he opportunity to participate in the drafting of a proper form of *Allen* charge was lost").

50. *See Snyder v. Massachusetts*, 291 U.S. 97, 105–06, 54 S.Ct. 330, 78 L.Ed. 674 (1934) ("Again, defense may be made easier if the accused is permitted to be present ... for it will be in his power, if present, to give advice or suggestion. . . . ").

jury, in a common sense manner as distinct from a legal one. Bradshaw was prejudiced in not having the chance to consult with his counsel on those considerations.

There is a second and independent reason why Bradshaw was prejudiced. Bradshaw was not present when the trial judge read the *Allen* charge to the jury. After deliberating for more than a day on Bradshaw's fate, the jury re-entered the courtroom only to see Bradshaw's chair empty. Instead of observing "a view of his sad plight" at this critical phase in their deliberations,[51] the jurors might have concluded that Bradshaw did not care enough about the outcome of his case to be present, or that he thought the result to be a foregone conclusion because he was guilty, or both. This also might have influenced their decision to find him guilty on two of the three charges. Accordingly, we conclude that his absence at this stage was inherently prejudicial.

### Conclusion

We conclude that Bradshaw's Rule 43 right to be present was violated and that neither Bradshaw nor his counsel waived that right. Bradshaw was prejudiced by his counsel's unauthorized agreement to the *Allen* charge and by his absence when the charge was given. Accordingly, we reverse the judgment of the Superior Court and remand for a new trial on one charge

of third degree rape and one charge of second degree unlawful sexual contact.[52]

---

**51.** *Crosby v. United States*, 506 U.S. 255, 259, 113 S.Ct. 748, 122 L.Ed.2d 25 (1993).

**52.** Although Bradshaw has appealed requesting a new trial, the jury acquitted him of one charge, one of the counts of third degree rape. A defendant convicted of one charge but acquitted on another who then procures a new trial may not be tried again on the count of which he was acquitted. *Benton v. Maryland*, 395 U.S. 784, 796, 89 S.Ct. 2056, 23

L.Ed.2d 707 (1969). "[C]onditioning an appeal of one offense on a coerced surrender of a valid plea of former jeopardy on another offense exacts a forfeiture in plain conflict with the constitutional bar against double jeopardy." *Green v. United States*, 355 U.S. 184, 193–94, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). Thus, Bradshaw may not be retried on the one count of third degree rape of which he was acquitted.