# IN THE SUPREME COURT OF THE STATE OF DELAWARE

RODERICK OWENS,

    Defendant Below,
    Appellant,

        v.

STATE OF DELAWARE,

    Appellee.

§
§  No. 6, 2022
§
§
§  Court Below: Superior Court
§  of the State of Delaware
§
§  Cr. ID No.   1312003447B (N)
§
§
§

Submitted: April 26, 2023
Decided:   July 13, 2023

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

Upon appeal from the Superior Court. **AFFIRMED.**

ZACHARY A. GEORGE, Esquire, Hudson, Jones, Jaywork & Fisher, Dover, Delaware, *for Appellant Roderick Owens*.

BRIAN L. ARBAN, Esquire, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware, *for Appellee State of Delaware*.

**TRAYNOR**, Justice:

After Roderick Owens was convicted in the Superior Court of possession of a firearm by a person prohibited and, separately, of possession of ammunition by a person prohibited, and this Court affirmed those convictions on direct appeal, Owens moved for postconviction relief under Superior Court Criminal Rule 61. Owens claimed that the proceedings leading to his convictions were unfair in a way that was not remediable on direct appeal. Specifically, Owens argued that his trial counsel was ineffective in several respects, including by failing to communicate a plea offer to him and secure his presence at a pretrial "final case review." Owens also complained that his trial counsel failed to investigate and present friendly witnesses at a hearing on a motion to suppress. These deficiencies, according to Owens, fell below the objective standard of reasonableness by which trial counsel's constitutionally required effectiveness must be measured. And more than that, his case would have been resolved more favorably—or so Owens argues—had his counsel more ably assisted him.

The Superior Court rejected Owens's bid to have his convictions set aside on those grounds. In short, the court found that Owens's trial counsel did in fact communicate all plea offers to Owens and that his presence at the final case review was not constitutionally required. The court further found that trial counsel's decision not to call the witnesses at Owens's suppression hearing was reasonable.

For good measure, the court also concluded that the testimony of the witnesses Owens had identified was unlikely to have averted the denial of Owens's suppression motion.

For the reasons that follow, we affirm the Superior Court's findings and conclusions on all counts. Its determination that Owens's trial counsel conveyed all plea offers to Owens is supported by trial counsel's affidavit and entitled to our deference. And we agree that Owens's trial counsel's analysis of the relevance of the potential witnesses' testimony and his decision not to call them was reasonable.

I

A

On December 5, 2013, Wilmington Police Department detectives working the night shift were patrolling the area around 24th and Carter Streets in Wilmington. The detectives considered this "a high crime and drug area."[1] Detective Thomas Lynch explained that, not only do "people often loiter in that area to buy, sell, and consume drugs[]," but there were several "shots fired" complaints in the preceding days.[2]

As the detectives drove northbound on Carter Street in their unmarked police car, they noticed an individual, later identified as Owens, sitting on the steps of a

---

[1] App. to Opening Br. at A37.
[2] *Id*.

vacant house at 122 East 24th Street. According to Detective Lynch, the owner of the house, which was boarded up, had reported his concerns with "[u]nknown individuals sitting on the steps and on the porches of the houses that were vacant."[3] When the detective turned westbound at the corner of 24th and Carter, Owens stood up and adjusted an object in his waistband. Detective Lynch, who was driving the unmarked car, made eye contact with Owens. In Lynch's words, as he "slowed the vehicle down, [Owens] began to walk off the steps. As . . . we began to open on the driver's side, he immediately fled on foot."[4]

> Detective Lynch summarized what happened next:
>
> A.  When [Owens] began [to] flee on foot, I observed he was still grasping that object in his waistband. So as I exited my vehicle, began to follow him on foot. As he continued to run grasping his waistband, I yelled, "stop, police."
> . . .
> He has his right hand grabbing an object in the front of his waistband by his belt or where his pants would end near his belly.
> . . .
> I could see that it looked like a large rectangular object, and the way the shirt came down, it made a distinct line above where the waistband would be on the pants.
> . . .
> These were characteristics that are consistent with an armed subject.
> . . .
> About a block after [Owens] began to run, he discarded a firearm on Jessup Street on the corner.[5]

---

[3] *Id.*

[4] *Id.*

[5] *Id.* at A38.

4

Another officer then apprehended Owens in an alley. Detective Lynch recovered the object—a firearm and a magazine that was ejected from the firearm when it hit the ground —Owens had discarded while running away.

B

Because one of the postconviction relief claims Owens continues to pursue on appeal hinges on what occurred at, as well as what Owens's trial counsel could recall five and a half years later about, Owens's final case review in September 2014, a review of the procedural history of Owens's case is appropriate.

Owens was indicted in February 2014 on one count each of possession of a firearm by a person prohibited ("PFBPP"), possession of ammunition by a person prohibited ("PABPP"), carrying a concealed deadly weapon ("CCDW"), and resisting arrest. The CCDW and resisting arrest charges were severed from the PFBPP and PABPP charges, creating an "A" case as to the former and "B" case as to the latter.

At Owens's first case review,[6] which occurred in April 2014, the State offered a plea to CCDW and PFBPP, agreeing to cap its sentencing recommendation at 15 years of Level V incarceration. That same month, trial counsel filed a motion to

---

[6] Under the relevant Superior Court Criminal Case Management Plan, "[e]very case will be scheduled for a minimum of two case reviews unless disposed of earlier." SUPER. CT. NEW CASTLE CNTY., CRIMINAL CASE MANAGEMENT PLAN at 4 (2000). In addition to engaging in plea negotiations, counsel for the parties are expected to address the statute of discovery, any issues that may call for judicial assistance, and any outstanding motions that need to be addressed. *Id*.

suppress evidence—the firearm and magazine—arguing that the detectives who stopped Owens lacked a reasonable articulable suspicion that would justify an investigatory stop. This, according to Owens, rendered his detention and the seizure of evidence during it unlawful. Owens thus urged the Superior Court to suppress that evidence. The suppression hearing occurred in August 2014. Detective Lynch, whose testimony is summarized above, was the only witness at the suppression hearing.

The court denied Owens's motion finding that:

> [U]nder the totality of the circumstances, Det. Lynch had reasonable articulable suspicion to stop Defendant. Defendant was sitting at a vacant home with boarded windows bearing a "No Loitering" sign. Det. Lynch was aware that the owner had reported that people had been loitering at the home. The home was in a high crime area where Det. Lynch had received a call of gunshots just a few days prior to the incident. Before Det. Lynch could approach Defendant, Defendant stood up and adjusted his waistband and fled while grasping a rectangular object in his waistband. Det. Lynch was familiar with these types of movements as being the movements of an armed individual. Based on the totality of these circumstances, Det. Lynch had reasonable articulable suspicion to seize the Defendant.[7]

Owens's final case review took place on September 2, 2014, a week before the court denied the suppression motion. Trial counsel appeared on behalf of Owens. Neither Owens nor the prosecutor was present in the courtroom. During the final case review, trial counsel represented to the court that there was a pending

---

[7] App. to Opening Br. at A700.

suppression motion and that the most recent plea offer included a sentencing recommendation by the State of the "minimum mandatory" of "ten years"—down from the previously offered 15 years. Trial counsel did not have a copy of the plea offer during the final case review. Counsel did not state that Owens, who, like the prosecutor, was not in the courtroom, had rejected the 10-year offer. Nevertheless, the court responded: "Based upon your representation, I don't think I need to speak with Mr. Owens. I can understand why the plea is being rejected at this time."[8]

Trial in the "B" case took place over two days starting on September 16, 2014. The jury found Owens guilty of both PFBPP and PABPP. The State then filed a motion to declare Owens a habitual offender and to sentence him under 11 *Del. C.* §4214(a) for the PFBPP offense. If granted, Owens would be exposed to an enhanced sentencing range of 15 minimum mandatory years to life imprisonment on the PFBPP offense.

In December 2014, the court granted the State's habitual-offender motion and sentenced Owens to the minimum-mandatory 15 years at Level V for the PFBPP charge and 8 years at Level V for the PABPP charge, to run consecutively, suspended after 4 years at Level V. Owens sentence was affirmed by this Court on March 4, 2016.

---

[8] *Id.* at A721.

C

Owens timely filed his first *pro se* motion for postconviction relief on February 27, 2017, alleging, among other claims, ineffective assistance of counsel. Owens was appointed postconviction counsel in March 2017, and counsel filed an amended motion for postconviction relief in March 2020. In its decision to deny Owens's motion for postconviction relief, the Superior Court attributed this three-year delay between the appointment of counsel and the filing of the amended motion to "procedural and administrative misadventures, including motions to withdraw, judicial reassignments, the COVID-19 pandemic,[9] and Mr. Owens's repeated deliveries of new claims via *pro se* letters. . . ."[10]

The amended motion alleged that Owens's trial counsel provided ineffective assistance in two ways. First, Owens claimed that his counsel "failed to meet with [him] to discuss the State's evidence and also to discuss any plea offers [that] were presented to [him]."[11] Nestled inconspicuously in Owens's statement of this claim was a reference to the final case review as a "critical stage[] of his proceedings" and an allegation that Owens's absence from it caused him to "suffer[] constitutional

---

[9] The trial court's reference to the COVID-19 pandemic appears to have been prompted by its misunderstanding that the amended motion was filed on September 1, 2020, when it was in fact filed on March 11, 2020. This Court's first administrative order in response to the pandemic went into effect on March 16, 2020. Thus, the pandemic could not have caused the delay in the filing of the amended motion; it was, however, a factor that likely contributed to the State's delayed filing in September 2021 of its response to the amended motion.

[10] *State v. Owens*, 2021 WL 6058520, at *4 (Del. Super. Ct. Dec. 21, 2021).

[11] App. to Opening Br. at A361.

prejudice."[12]  And second, Owens alleged that his counsel "failed to investigate witnesses who could have assisted in his defense"[13] and, in particular, in support of his motion to suppress.

The amended motion was supported by numerous exhibits, including an affidavit by Owens.  Owens's affidavit recounts, among other things, how he identified two witnesses who might be helpful at the upcoming suppression hearing. One witness would, according to Owens, testify that the property at 122 East 24th Street where Owens was found loitering was not boarded up as Detective Lynch had alleged in his affidavit of probable cause.  The other witness managed the property and, the affidavit states, would testify that he had never spoken with Detective Lynch or anyone else from the Wilmington Police Department about a loitering problem.[14]

Owens's affidavit also addressed the plea negotiations and his absence from the September 2, 2014 final case review:

> During my proceedings [my counsel] never informed me that a plea offer existed.  On September 2, 2014 a final case review was conducted. I never met with counsel nor was I present at the final case review.  I waited in a holding cell all day then returned back to [Howard R. Young Correctional Institution].  On that date [my counsel] did not speak with me and explain that a plea offer was available.  Counsel did not review the strengths and weaknesses of the State's case.  Counsel did not give me an opportunity to consider the plea offer.[15]

---

[12] *Id*. at A363

[13] *Id.* at A364.

[14] Although not mentioned in his affidavit, in his opening brief, Owens also identified another potential witness:  the property owner, who had sent Owens's counsel a letter stating that she had not made complaints to the police about Owens.

[15] App. to Opening Br. at A755.

Notably, Owens does not state that, had the late-breaking plea offer been shared with him, he would have accepted it.

Owens's trial counsel submitted an affidavit responding to Owens's allegations. In it, he addressed his reason for not interviewing the witnesses who might testify about the condition of 122 East 24th Street and the associated loitering problem. The reason was short and to the point: trial counsel "did not believe that the relevant inquiry [at the suppression hearing] was whether the house was vacant."[16]

Trial counsel's description of the circumstances surrounding the plea offers in Owens's case was more elaborate. At the outset, counsel categorically denied Owens's charges that he failed to meet with Owens to discuss the State's evidence or to discuss the State's plea offers. He specifically recalled a video conference on December 19, 2013, a meeting at the courthouse during the initial case review in April 2014, and a June 17, 2014 meeting "at the prison . . . to discuss [the] case and the upcoming suppression hearing."[17] He also confirmed that, under the initial plea offer, which the State extended at the first case review, Owens would plead guilty to PFBPP and be subject to a 15-year minimum mandatory sentence as a habitual offender. Counsel conveyed this offer, which was to remain open until the final case

---

[16] *Id.* at A730.
[17] *Id.* at A732.

review, to Owens and discussed it with him. Although counsel's affidavit does not describe Owens's response to the offer, it is undisputed that he rejected it.

About a revised plea offer and what occurred at the final case review, trial counsel was less emphatic. Drawing on his memory of events that occurred five and a half years earlier, counsel again denied Owens's allegation that he did not present the plea offer extant as of the final case review to Owens. Admittedly, counsel's denial was not entirely unequivocal and drew more on his professional habits than on his memory:

> I believe I met with Mr. Owens at final case review. I cannot think of a circumstance where I have ever not met with a client at a case review where the client was present. Final case review occurred on September 2, 2014. I do not have independent recollection that I met with Mr. Owens that day, but I cannot imagine a scenario where I would not have met with him.
>
> [] Further, in an email to the State about the severed charges written after the September 2, 2014 final case review, I wrote "I will certainly convey the offer to my client as I'm required to do. I'm not inclined however, to believe that my client will want to accept it." There is simply no way that I would have failed to convey a plea offer to my client.[18]

---

[18] *Id*. at A729.

11

D

Although Owens's postconviction relief motion asked the Superior Court to hold an evidentiary hearing, the court denied the motion without one, relying instead on the parties' written submissions, including the affidavits described above. The court found that Owens had "received, but rejected, every plea offer."[19] The court made short work of Owens's depiction of the final case review as a "critical stage" requiring his presence; a final case review, according to the court, in contrast to a critical stage "is merely a docket-management tool that operates as a status conference and streamlines administrative matters before a case is set for trial."[20] And as for Owens's ineffective-assistance-of-counsel claims based on trial counsel's failure to interview and call witnesses at the suppression hearing, the court agreed with Owens's trial counsel: the witnesses' potential testimony about the condition of 122 East 24th Street and whether there was a loitering problem in the area was not relevant to whether the officers had a reasonable suspicion that Owens possessed a concealed weapon. On appeal, Owens contests each of these rulings. He also claims that the cumulative effect of his counsel's ineffectiveness and his absence from the courtroom during his final case review warrants postconviction relief.

---

[19] *Owens*, 2021 WL 6058520, at *9.
[20] *Id.* at *11.

## II

This Court reviews the denial of a motion for postconviction relief for an abuse of discretion.[21] An abuse of discretion occurs when the court has "exceeded the bounds of reason in light of the circumstances, or so ignored recognized rules of law or practice so as to produce injustice."[22] "[W]e carefully review the record to determine whether 'competent evidence supports the court's findings of fact.'"[23] Legal and constitutional questions are reviewed *de novo*.[24]

## III

## A

To succeed on an ineffective assistance of counsel claim, a movant must demonstrate that counsel's representation "fell below an objective standard of reasonableness" and "that the deficiencies in counsel's representation caused him substantial prejudice."[25] Movants face a "heavy burden" in demonstrating that counsel's performance was objectively unreasonable because there is "a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."[26] The inquiry into the reasonableness of counsel's

---

[21] *Swan v. State*, 248 A.3d 839 (Del. 2021).
[22] *McNair v. State*, 990 A.2d 398, 401 (Del. 2010).
[23] *Neal v. State*, 80 A.3d 935, 941 (Del. 2013) (quoting *Zebroski v. State*, 822 A.2d 1038, 1043 (Del. 2003)).
[24] *Outten v. State*, 720 A.2d 547, 551 (Del. 1998).
[25] *Green v. State*, 238 A.3d 160, 174 (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).
[26] *Id.* (quoting *Strickland*, 466 U.S. at 687–88).

representation considers "not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'"[27]  Objectively unreasonable performance is performance where "no reasonable lawyer would have conducted the defense as [this] lawyer did."[28]  If a movant fails to show that counsel's performance was objectively unreasonable, this Court need not address the prejudice prong.[29]

The prejudice prong of the *Strickland* test is also "a formidable obstacle" in a movant's path because "a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[30]  A reasonable probability is one that is "sufficient to undermine confidence in the outcome, a standard lower than more likely than not. The likelihood of a different result must be substantial not just conceivable."[31]

Owens seeks to avoid the *Strickland* prejudice prong as to his claim that his trial counsel did not tell him about the final-case-review plea offer.  There is, it is true "a narrow set of circumstances where the deprivation of effective counsel is 'so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'"[32]  Thus, under the rule announced in *United States v. Cronic*,

---

[27] *Id*. (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).
[28] *Id*. (quoting *Burger*, 483 U.S. at 791).
[29] *Id*. at 174–75 (citing *Strickland*, 466 U.S. at 697.)
[30] *Id*. (quoting *Starling v. State*, 130 A.3d 316, 325 (Del. 2015)).
[31] *Id*.
[32] *Reed v. State*, 258 A.3d 807, 824 (Del. 2021) (quoting *United States v. Cronic*, 466 U.S. 648, 658 (1984)).

14

when there has been a "complete denial of counsel . . . at a critical stage of trial," prejudice is presumed.[33]   A movant can also demonstrate a complete denial of counsel where there is a "constructive denial of counsel."[34]   Constructive denial of counsel occurs when there is a "'complete breakdown,' either 'in the adversarial process' or in attorney-client communication."[35]   Where a movant was actively represented by an attorney and actively communicated with that attorney he will be unable to demonstrate a complete breakdown in communication.[36]

According to Owens, "trial counsel's failure to even communicate the second plea offer to Mr. Owens constituted a complete denial of counsel during the critical plea-bargaining stage."[37] This, Owens contends, means that the Court should presume prejudice under *Cronic*.  As will be seen below, Owens's essential factual predicate for this contention—that the plea offer was not communicated to him—has failed.  And Owens has not otherwise demonstrated a "complete denial of counsel" at any critical stage of his case.  He must therefore show prejudice under *Strickland*.

---

[33] *Cronic*, 466 U.S. at 659.
[34] *Reed*, 258 A.3d at 825 (quoting *Weaver v. Mass.*, 582 U.S. 286, 308 (2017) (Alito J. concurring)).
[35] *Id*. (quoting *U.S. v. Lustyik*, 833 F.3d 1263, 1269 (10th Cir. 2016); *Daniels v. Woodford*, 428 F.3d 1181, 1197 (9th Cir. 2005)).
[36] *Id*.
[37] Opening Br. at 25.

B

Owens's claim that his trial counsel's performance during the plea-bargaining process was objectively unreasonable depends entirely on his allegation that counsel did not share the final-case-review plea offer with him.[38] In response to the Superior Court's unequivocal rejection of that allegation, Owens argues that the court's factual finding—that "Owens received, but rejected, every plea offer"[39]—is not supported by competent evidence. For Owens, his trial counsel's lack of an independent recollection of the events surrounding the final case review renders counsel's sworn statement that he believes that he communicated the offer inconsequential. At the very least, Owens argues, the court abused its discretion by not holding an evidentiary hearing to resolve the competing factual narratives.

Under Superior Court Criminal Rule 61(h)(1), "[a]fter considering the motion for postconviction relief, the State's response, the movant's reply, if any, the record of prior proceedings in the case, and any added materials, the judge shall determine whether an evidentiary hearing is desirable."[40] We have interpreted this rule as granting the Superior Court broad discretion to determine the need for an evidentiary hearing.[41] Here, the court concluded that a hearing would not be desirable because

---

[38] Owens actually argues that his counsel did not communicate any plea offers with him, including the one extended at the initial case review.
[39] *Owens*, 2021 WL 6058520, at *9.
[40] Super. Ct. Crim. Rule 61(h)(1).
[41] *Swan*, 248 A.3d at 884.

16

"the record refutes Mr. Owens's allegation that Trial Counsel never told him about a plea."[42]  Was the drawing of this conclusion an abuse of discretion?  We think not.

In the first place, that trial counsel had no independent recollection of meeting with Owens at the final case review, which was five and a half years in the past, does not negate all else that he said in his affidavit.  He did recall, for instance, communicating the initial plea offer to Owens who, in turn, says that never happened.  And as previously noted, in his sworn affidavit, trial counsel stated that (i) he believed he met with Owens during the final case review, (ii) it was his regular practice to meet with his clients at case review, and (iii) he "[could not] imagine a scenario where [he] would not have met with [Owens] [at the final case review.]"[43] He also appended to his affidavit an email that he sent to the prosecutor after the September 2014 final case review, confirming that he would "certainly convey" plea offers to Owens as he was "*required to do*."[44]  Our rules of evidence recognize that such "[e]vidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice."[45]  Here, the court's crediting of trial

---

[42] *Owens*, 2021 WL 6058520, at *15.
[43] App. to Opening Br. at A729.
[44] *Id*. (emphasis added).
[45] D.R.E. 406.

counsel's sworn statements regarding his professional habits and routine practice was not an abuse of discretion.

In addition to that, the Superior Court offered a reasonable explanation of why an evidentiary hearing was not desirable. As we read the Superior Court's opinion, it assumed that, at an evidentiary hearing, Owens and his trial counsel would merely reiterate what they stated in their respective affidavits. In the court's words, it was not inclined "to resolve a credibility battle between an *ipse dixit* narrative emerging for the first time in an amended Rule 61 motion and [trial counsel's] affidavit supported by a record that contradicts the defendant's claims."[46] Because an evidentiary hearing was not going to "move the needle" in Owens's direction, forgoing one was not an abuse of discretion.

The Superior Court's factual determination that "Owens received, but rejected, every plea offer" extended by the State is also supported by the record. Because that determination discredits the factual premise of Owens's claim about his counsel's deficient performance during the plea-negotiation process, the Superior Court did not err by denying it.

And Owens's claim fails for an additional reason: he cannot show prejudice under *Strickland*. To show prejudice, Owens was required to demonstrate that, had the plea offer been communicated to him, there is a reasonable probability that he

---

[46] *Owens*, 2021 WL 6058520, at *15.

18

would have accepted it.[47] Owens neither hints in his amended motion for postconviction relief nor swears in his supporting affidavit that he was open to pleading guilty at his final case review. In fact, as the Superior Court observed, with a decision on Owens's motion to suppress still pending, all signs pointed in the other direction.

C

Embedded in Owens's claim—at least as stated in the Superior Court—that his trial counsel failed to communicate the final-case-review plea offer to him is a subsidiary claim that his absence from the courtroom during the final case review is grounds for postconviction relief. This is so, according to Owens, because a final case review is a critical stage in a criminal proceeding.

Although the Superior Court addressed this claim as part and parcel of Owens's ineffective assistance claim, Owens's amended Rule 61 motion and his briefing in this Court do not clearly point a finger at trial counsel on this issue.[48]

---

[47] *See Lafler v. Cooper*, 566 U.S. 156, 174 (2012) ("As to prejudice, respondent has shown that but for counsel's deficient performance there is a reasonable probability that he and the trial court would have accepted it."); *see also Missouri v. Frye*, 566 U.S. 134, 147 (2012) ("To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law.").

[48] Both the Superior Court in its opinion denying Owens's postconviction relief motion and the State in its answering brief in this Court treat Owens's "critical stage" argument as part of his ineffective-assistance-of-counsel claim. *See Owens*, 2021 WL 6058520, at *5 ("Mr. Owens alleges Trial Counsel was ineffective because he failed to produce him for final case review on the

Instead, Owens appears to argue that because plea negotiations are a critical stage in a criminal case and thus the right to effective counsel attaches to them, defendants have a right to be present for the negotiations. Owens also makes the odd claim that he "only could have learned of the [final plea] offer had he been present in the courtroom for his final case review."[49] These arguments are based on a misunderstanding of how plea negotiations typically unfold and a conflation of a defendant's right to counsel and his right to be present for particular proceedings.

Owens grounds his "critical stage" argument on the uncontroversial proposition that "the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel."[50] He does not, however, explain how his absence from the courtroom at the September 2, 2014 final case review ran afoul of this principle. To be sure, he does claim that, had he been in the courtroom, he would have learned of the final plea offer, but that is really just a rehashing of the factual claim—his claim that he was not made aware of the final plea offer—that the Superior Court rejected. And, in any event, the

A case, which he says is a critical stage in the proceedings and during which he had a right to be present in the courtroom."); *see also* Answering Br. at 24 (arguing that the Superior Court did not abuse its discretion when it rejected Owens's claim that his trial counsel "was ineffective for not securing Owens's appearance at final case review.") We see no such allegation in Owens's amended motion nor does Owens make this argument in his briefing on appeal. Instead, he appears to argue that he had a right to be present in the courtroom during the final case review, irrespective of his counsel's performance. Either way, Owens's "critical stage" claim fails.

[49] Opening Br. at 36.

[50] *Id.* at 25 (quoting *Frye*, 566 U.S. at 141).

20

record of what occurred in the courtroom during the final case review shows that no plea negotiations ever took place at the event; the prosecutor was not even there.

It is also important to note here that plea negotiations do not typically occur under direct judicial supervision in a courtroom. They can take place in a variety of settings, such as a prosecutor's office, a vacant jury room, or over the telephone. When that happens, the defendant is almost never physically present. Incarcerated defendants will ordinarily learn of case-review plea offers during a conference with counsel in a courthouse "lock up" or via a video conference. The fact that the Superior Court has developed a series of status conferences—case reviews—during which the status of plea negotiations is discussed does not transform those conferences into a critical stage as that term is used in criminal constitutional jurisprudence.

This conclusion is borne out by Superior Court Criminal Rule 43, which addresses the presence of the defendant during criminal proceedings. Under the rule, the defendant's presence is required "at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence. . . ."[51] No mention is made of case reviews—initial or final.

---

[51] Super. Ct. Crim. Rule 43.

This is not to say that Rule 43's list is exhaustive as there is a constitutional dimension to the right of a criminal defendant to be present for certain proceedings. The right "is rooted to a large extent in the Confrontation Clause of the Sixth Amendment,"[52] and it is also protected by the Due Process Clause.[53] "[D]ue process guarantees a defendant's right to be personally present 'whenever [the defendant's] presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'"[54] Applying these principles, courts have held that the right to be present does not extend to pretrial hearings concerning discovery sanctions,[55] pretrial conferences,[56] and potential hearings designed to expedite procedures leading up to trial.[57]

A final case review in the Superior Court sitting in New Castle County bears no substantial relation to a criminal defendant's opportunity to defend against the charges he is facing. Rather, as the Superior Court noted, a "[f]inal case review is merely a docket-management tool that operates as a status conference and streamlines administrative matters before a case is set for trial." The accuracy of the description is confirmed by the Superior Court (New Castle County) Criminal Case

---

[52] *United States v. Gagnon*, 470 U.S. 522, 526 (1985).
[53] *Snyder v. Massachusetts*, 291 U.S. 97, 105–06 (1934).
[54] *Bradshaw v. State*, 806 A.2d 131, 134 (Del. 2002) (quoting *Snyder*, 291 U.S. at 105–06).
[55] *United States v. Gonzales-Flores*, 701 F.3d 112 (4th Cir. 2012).
[56] *State v. Chapman*, 464 S.E. 2d 661 (N.C. 1995).
[57] *State v. Clary*, 270 F.3d 88 (Mont. 2012).

Management Plan.[58]  At the final case review, counsel advises the court of, among other things, the status of plea negotiations, outstanding motions and discovery disputes, if any.  The Case Management Plan contemplates that, if the case is not to be resolved at the final case review, the court will address the defendant in open court and advise him that "[a]bsent exceptional and unforeseen circumstances and for good cause shown,"[59] the court will not accept a plea agreement after that date.  Granted, for reasons that are unclear, this last step did not occur in Owens's case.  That is regrettable.  Had the Case Management Plan been followed, the record of the colloquy between the court and Owens would have laid to rest the factual question at the heart of Owens's amended motion:  did Owens's counsel communicate the final-case-review plea offer to him?  But the absence of that record does not transform a status conference that operates as a "docket-management tool" into a critical stage of constitutional significance.  Owens has cited no authority suggesting otherwise, and we are not of the mind to create one here.

D

We turn next to Owens's claim that his "trial counsel was ineffective by failing to present evidence at the suppression hearing that would have caused the court to grant the motion to suppress had it been presented."[60]  The evidence would

---

[58] *See supra* note 6.
[59] *Id.* at 7.
[60] Opening Br. at 41.

have been presented through three witnesses, none of whom were interviewed by Owens's trial counsel. According to Owens's amended motion, one witness, if called, would have produced photographs taken shortly after Owens's arrest that would show that 122 East 24th Street was not boarded up. According to Owens's affidavit, a second witness—the property manager—would have testified that he had never spoken with anyone associated with the Wilmington Police Department about a loitering problem in the vicinity. This witness would also have testified that the home on the property was not vacant or boarded up and did not bear a "No Loitering" sign. A third witness—the property owner—had sent a letter to Owens's trial counsel stating that she had not called the police on the date of Owens's arrest.

In the Superior Court, Owens asserted that his trial counsel's failure to call these witnesses at the suppression hearing "resulted in prejudice to Owens[] as they would have provided testimony to challenge the testimony of Detective Lynch[.]"[61] More specifically, Owens contended that the witnesses' testimony "would have challenged Detective Lynch's basis for stopping Owens in the first place and only could have assisted Owens in challenging the legality of the stop of Owens in the first place."[62]

---

[61] App. to Opening Br. at A366.
[62] *Id.*

24

In his affidavit, Owens's trial counsel acknowledged that he did not interview any of the identified witnesses and that he had received the letter from the property owner. As mentioned earlier, his reason for not pursuing the angle suggested by Owens was simple: "At that time, I did not believe that the relevant inquiry was whether the house was vacant. I believed that the relevant inquiry was whether police seized Owens unlawfully."[63]

The Superior Court found that trial counsel's analysis was reasonable and that, therefore, his failure to call the witnesses did not constitute deficient performance under *Strickland*. The court also concluded that it was not substantially likely that the appearance and testimony of the witnesses would have resulted in a different ruling on Owens's motion to suppress. Thus, there was no prejudice under *Strickland*. We agree on both counts, either of which suffices to defeat Owens's ineffective-assistance claim.

Under *Strickland's* performance prong, this Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[64] *Strickland* reminds us that, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions

---

[63] *Id.* at A730.
[64] *Strickland*, 466 U.S. at 689.

regarding how best to represent a criminal defendant."[65] The strong presumption of reasonableness is in place "[i]n order to eliminate 'the distorting effects of hindsight.'"[66] Once "an attorney makes a strategic choice 'after thorough investigation of law and facts relevant to plausible options,' that decision is 'virtually unchallengeable.'"[67]

Here, Owens's trial counsel correctly focused on the lawfulness of Detective Lynch's encounter with Owens. The condition of the property where the detective first discovered Owens was of marginal significance to that issue. As the Superior Court observed, Owens grasped at an object in his waistband even before the detectives had stopped their car, and he fled when Detective Lynch opened the driver's side door. While running, Owens again reached for the object tucked in his waistband, which was "large" and "rectangular," leading the detective to believe that he was armed. Facing these facts, it was not objectively unreasonable for Owens's trial counsel to conclude that the lawfulness of Owens's detention did not hinge on the forgone witnesses' testimony. It follows that trial counsel's decision not to call the witnesses did not deprive Owens of the effective assistance of counsel.

---

[65] *Id*. at 689–90

[66] *Hoskins v. State*, 102 A.3d 724, 730 (Del. 2014) (quoting *Gattis v. State*, 697 A.2d 1174, 1178 (Del. 1997)).

[67] *Ploof v. State*, 75 A.3d 840, 852 (Del. 2013) (quoting *Strickland*, 466 U.S. at 690–91).

Having upheld the Superior Court's determination that trial counsel's performance was not deficient, we need not address the issue of prejudice. We nevertheless register our agreement with the Superior Court that, given the marginal relevance of the testimony of the identified witnesses, it is not substantially likely that their presence at the suppression hearing would have led to a different result. Owens thus suffered no prejudice.

E

Finally, Owens makes a "cumulative error" claim, contending that "the cumulitive [sic] effect of trial counsel's ineffective representation and Mr. Owens's absence from his final case review jeopardized the integrity of the trial process."[68] But for a claim of "cumulative error" to succeed, it must identify multiple errors in the proceedings below;[69] here Owens has not identified a single one. His "cumulative error" claim is therefore without merit.

IV

For the reasons set forth above, we affirm the Superior Court's decision denying Owens's postconviction motion.

---

[68] Opening Br. at 37.
[69] *Michaels v. State*, 970 A.2d 223, 231 (Del. 2009).

27