IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CEDRIC SMITH, | § | |
| | § | No. 273, 2024 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 2308000437 (S) |
| STATE OF DELAWARE, | § | |
| | § | |
| Appellee. | § | |

Submitted: March 18, 2024
Decided:  May 22, 2025

Before **VALIHURA**, **TRAYNOR**, and **LEGROW**, Justices.

## **ORDER**

On this 22nd day of May, 2025, after consideration of the parties' briefs and the record below, it appears to the Court that:

(1)  Cedric Smith appeals from a Superior Court decision denying his motion for a new trial under Superior Court Criminal Rule 33. Smith contends that the trial court's response to a second note from the jury was a coercive *Allen* charge and that the Superior Court therefore erred in denying his motion for a new trial. We conclude that the challenged instruction did not constitute an *Allen* charge, and we therefore affirm the Superior Court's decision and Smith's conviction.

**FACTUAL AND PROCEDURAL BACKGROUND**

(2)     The State presented the following evidence at trial.  Smith was in a romantic relationship with Jessica Gibbs.  In February 2023, Smith moved into Gibbs' Seaford home with Gibbs, the couple's two adult children, and Gibb's fifteen-year-old daughter, C.M., who is not related to Smith.  The home contained several motion-activated cameras, with one placed in the downstairs living room and one positioned over Gibbs' bedroom door.

(3)     On July 4, 2023, Gibbs left for work at approximately 7:00 p.m.  Smith then left the residence for a short time but quickly returned.  C.M. and her half-brother, who was in bed with his door closed, were the only other individuals in the house.  C.M. was in her own bedroom when Smith entered and asked her to come to his room.  C.M. complied, but only after Smith asked more insistently a second time.  When C.M. entered Smith's room, she noticed that something was covering the camera above the door.

(4)     C.M. testified that she entered the bedroom and Smith demanded that she take her pants off.  Smith removed C.M.'s pants and underwear before removing his own.  Smith then placed her on the bed and had sex with her.  She "pushed him off . . . and he walked away to the bathroom," at which point C.M. gathered her belongings and "ran out of the room."  Gibbs testified that C.M.'s private area was

2

swollen to the size of a tennis ball the next day. C.M. was later treated for a yeast infection.

(5) Gibbs returned home on July 5 and noticed that the camera above her bedroom was unplugged. On July 7, Gibbs went back to work in the evening hours and began watching the cameras at the house. She observed C.M. and Smith in the kitchen discussing C.M.'s condition and later confronted C.M. about the conversation. Gibbs recorded part of the conversation. C.M. initially denied any issues with Smith but eventually told her mother that she and Smith had had sexual intercourse. Gibbs then ordered Smith to leave the house and reported the incident to the police.

(6) Trial began on March 11, 2024, on a single charge of second-degree rape. The jury began deliberating shortly before noon on March 12. After about two hours and forty-five minutes, the jury sent a note to the Superior Court indicating that they were unable to reach a verdict. The note specified that the jury was split ten-to-two in favor of guilt. The court then read the pattern *Allen* charge to the jury. About forty minutes later, the jury sent a second note to the judge. The note stated that one juror no longer wanted to deliberate and was asking to speak to the trial judge.

(7) The judge brought the jury back into the courtroom and responded to the note with the following supplemental instruction (the "Instruction"):

3

> It is not appropriate for me to have a discussion with any juror at this point in time. You are in the midst of deliberations. The only discussions I can have with you is as we are doing right now. I am going to ask you as politely as I can to go back to the jury room and continue with your deliberations.[1]

Approximately one hour and fifteen minutes after the second instruction, the jury returned its verdict finding Smith guilty of second-degree rape.

(8)    After trial, Smith filed a timely motion for new trial.  His sole argument was that the Instruction was a coercive *Allen* charge.  The trial court stated that the Instruction was not an *Allen* instruction, pointing out that there was nothing in the record that supported Smith's argument that the jury was deadlocked.[2]  Nevertheless, the court analyzed the four factors used to determine whether an *Allen* charge was coercive and concluded that the Instruction was not coercive.[3]  Smith then appealed.

## II. ANALYSIS

(9)    We agree with the Superior Court that the Instruction was not an *Allen* charge.  An *Allen* charge is "a supplemental instruction encouraging the jury to reach a verdict"[4] and amounts to "a request from a trial court to the jury to attempt to come to a decision without abandoning any firmly held beliefs."[5]  The Instruction in this

---

[1] A39–40.

[2] *Smith v. State*, 2024 WL 1715171, at *3 (Del. Super. Apr. 19, 2024).

[3] *Id*. at *2–4 (citing *Boatson v. State*, 457 A.2d 738, 744 (Del. 1983); *Streitfeld v. State*, 369 A.2d 674, 677 (Del 1977)).

[4] *Holland v. State*, 744 A.2d 980, 981–82 (Del. 2000).

[5] *Bradshaw v. State*, 806 A.2d 131, 139 (Del. 2002).

case did not mimic an *Allen* charge in form or substance. The trial court had given the jury an *Allen* instruction less than an hour earlier, but the Instruction was not similar to that earlier charge.

(10) The Instruction was only four sentences long and directly responded to a request posed by a juror. The note stated that one juror no longer wished to deliberate and that the juror was requesting a meeting with the judge. No explicit reason was given for the juror's refusal to deliberate. The note gave no indication that the juror had reached a final conclusion, and the Superior Court could neither assume as much nor inquire further into the juror's position. The note came forty minutes after the Allen charge was given and less than three-and-a-half hours after the jury began its deliberations.

(11) The language of the Instruction did not encourage the jury to come to a verdict but rather explained why the request for an *ex parte* communication was being denied. The court first stated that "it is inappropriate" for a judge to meet with a juror. The Instruction then reaffirmed that the jury is "in the midst" of deliberations and that they should return to "continue" deliberating. At no point did the Instruction's language encourage the jury to reach a verdict. The trial judge's polite refusal to engage in *ex parte* communications and his instruction to the jury to return to its deliberations did not amount to an *Allen* charge. We therefore do not need to

5

consider whether the charge met the four-factor coercion test applicable to *Allen* instructions.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is affirmed.

BY THE COURT:

*/s/ Abigail M. LeGrow*
Justice